SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-09-0266-AP |
| Appellee, | ) | |
| | ) | Pima County |
| v. | ) | Superior Court |
| | ) | No. CR55947 |
| SCOTT DOUGLAS NORDSTROM, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

Appeal from the Superior Court in Pima County
The Honorable Richard D. Nichols, Judge

**AFFIRMED**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL              Phoenix
     By    Kent E. Cattani, Division Chief Counsel
           Jeffrey A. Zick, Section Chief Counsel
           Capital Litigation Section
           Lacey Stover Gard, Assistant Attorney General    Tucson
Attorneys for State of Arizona

SHARMILA ROY ATTORNEY AT LAW                           Laveen
     By    Sharmila Roy
Attorney for Scott Douglas Nordstrom
_____

**B A L E S**, Vice Chief Justice

¶1     This automatic appeal arises from Scott Douglas Nordstrom's 2009 death sentences for his 1996 murders of Thomas Hardman and Carol Lynn Noel.  We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 13-4031 (2011).

## FACTS AND PROCEDURAL BACKGROUND

**¶2** On May 30, 1996, Scott Nordstrom and Robert Jones shot and killed Thomas Hardman and Clarence O'Dell while robbing the Moon Smoke Shop in Tucson. *State v. Nordstrom (Nordstrom I)*, 200 Ariz. 229, 236-37 ¶¶ 1-4, 25 P.3d 717, 724-25 (2001). Two weeks later, Nordstrom and Jones shot and killed Carol Lynn Noel and three others during a robbery at the Firefighters' Union Hall, a Tucson social club. *Id.* at 237-38 ¶¶ 5-7, 25 P.3d at 725-26.

**¶3** Police arrested Nordstrom and his brother David in connection with the murders. *Id.* at 239 ¶ 17, 25 P.3d at 727. David admitted he had accompanied Nordstrom and Jones to the Smoke Shop, but said he had stayed outside. *Id.* at 243 ¶ 35, 25 P.3d at 731. David entered a plea bargain regarding the Smoke Shop robbery; the State dismissed the charges against him related to the Union Hall robbery; and he testified as the State's key witness in the separate trials of Nordstrom and Jones. *Id.* at 238, 244 ¶¶ 10, 37, 25 P.3d at 726, 732; *State v. Jones*, 197 Ariz. 290, 298 ¶ 10, 4 P.3d 345, 353 (2000).[1]

**¶4** At Nordstrom's trial, eyewitness Carla Whitlock identified Nordstrom as one of the men she saw run from the

---

[1] A jury found Jones guilty on six counts of murder and other charges, and he received a death sentence for each murder. *See Jones*, 197 Ariz. at 297 ¶ 1, 4 P.3d 352.

2

Smoke Shop on the night of the robbery. David testified that he had driven Nordstrom and Jones to the Smoke Shop; the pair entered with handguns and he heard shots; Nordstrom and Jones later told him they had each shot a person; and the three had split the robbery money. David also testified that Nordstrom told him about the Union Hall robbery. *Nordstrom I*, 200 Ariz. at 238 ¶ 9, 25 P.3d at 726. Another witness, Michael Kapp, testified that Nordstrom had solicited him to rob the Union Hall two years earlier. *Id.* In his defense, Nordstrom presented alibi evidence for the day of the Smoke Shop robbery and evidence suggesting that David had committed the crimes and implicated his brother to save himself. *Id.* ¶ 10.

¶5 Nordstrom was convicted of the first degree premeditated murders of Hardman and Noel, of felony murder for the other four homicides, and of attempted murder, armed robbery, and first-degree burglary. *Id.* at 238-39 ¶ 12, 25 P.3d at 726-27. At sentencing, the trial judge found three aggravating circumstances under A.R.S. § 13-751 - (F)(1) (prior conviction of another offense punishable by life imprisonment or death), (F)(5) (pecuniary gain), and (F)(8) (multiple homicides) - and sentenced Nordstrom to death for each murder. *Id.* at 239 ¶ 13, 25 P.3d at 727. This Court affirmed on direct appeal. *Id.* at 257 ¶ 99, 25 P.3d at 745.

¶6 Before our mandate issued, the Supreme Court decided

3

*Ring v. Arizona*, 536 U.S. 584 (2002). In light of *Ring*, this Court vacated Nordstrom's death sentences and remanded for resentencing, concluding that a jury might have assessed the mitigating circumstances differently than did the judge. *State v. Nordstrom (Nordstrom II)*, 206 Ariz. 242, 248 ¶¶ 26-28, 77 P.3d 40, 46 (2003). The State subsequently withdrew its death penalty allegation for the four felony murder convictions and its (F)(5) and (F)(8) aggravator allegations for the murders of Hardman and Noel.[2]

¶7      At the new aggravation phase, the State argued that the murder of Hardman established the (F)(1) aggravating factor for Noel's murder and vice-versa. The jury found the (F)(1) aggravator for each murder. Nordstrom then waived the presentation of mitigation evidence and declined to allocute. At the penalty phase, the State presented details about the

---

[2] After the remand, the parties extensively litigated issues regarding the resentencing proceedings, resulting in several special actions in the court of appeals. For example, although *Nordstrom II* held it was harmless error for the trial judge, rather than a jury, to have found the aggravating factors, 206 Ariz. at 247 ¶ 17, 77 P.3d at 45, the court of appeals ruled that legislation enacted after *Ring* required the jury to find aggravating factors. *See Nordstrom v. Cruikshank*, 213 Ariz. 434, 438 ¶ 10, 142 P.3d 1247, 1251 (App. 2006). The court of appeals also ruled that Nordstrom could present alibi evidence in rebuttal if the State sought the death penalty for the felony murder convictions. *See State v. Nichols (Nordstrom)*, 219 Ariz. 170, 177 ¶¶ 19-20, 195 P.3d 207, 214 (App. 2008).

Hardman and Noel murders and also introduced evidence of Nordstrom's convictions for the four other homicides and other crimes at the Smoke Shop and Union Hall. The State also established that Nordstrom was on parole when the offenses occurred. The jury determined Nordstrom should receive death sentences for both murders.

DISCUSSION

**A.      Penalty Phase Evidentiary Rulings**

¶8      Nordstrom argues that the trial court erred by allowing the State to offer evidence during the penalty phase of the four felony murders when he did not present any mitigating evidence. We review admission of evidence for an abuse of discretion, *State v. Lehr*, 227 Ariz. 140, 147 ¶ 19, 254 P.3d 379, 386 (2011), and issues of constitutional and statutory interpretation de novo, *State v. Roque*, 213 Ariz. 193, 217 ¶ 89, 141 P.3d 368, 392 (2006).

¶9      Section 13-751(G) states that "[t]he trier of fact shall consider as mitigating circumstances any factors proffered by the defendant or state that are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense." Similarly, A.R.S. § 13-752(G) states:

At the penalty phase, the defendant and the state may

5

present any evidence that is relevant to the determination of whether there is mitigation that is sufficiently substantial to call for leniency. In order for the trier of fact to make this determination, the state may present any evidence that demonstrates that the defendant should not be shown leniency.[3]

¶10 The provisions, taken together, evince a legislative intent to permit the state to introduce relevant evidence whether or not the defendant presents evidence during the penalty phase. "Section 13-752(G) is framed broadly. . . . Subject to overarching due process considerations, any evidence that meets § 13-752(G)'s criterion is admissible, regardless of whether the evidence was admissible at a prior stage of the trial." *State v. Prince*, 226 Ariz. 516, 526 ¶ 15, 250 P.3d 1145, 1155 (2011) (internal citation omitted). As we have noted:

> At the penalty phase, the jury must make "a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *Kansas v. Marsh*, 548 U.S. 163, 174 (2006) (citing *Gregg v. Georgia*, 428 U.S. 153, 189 (1976) (Stewart, J., plurality opinion)). Construing § 13-752(G) as generally authorizing the admission of evidence concerning the circumstances of the crime and the aggravating factors thus preserves the

---

[3] This opinion cites the current version of statutes unless otherwise indicated. In 2012, the legislature amended § 13-752(G) to read: "In order for the trier of fact to make this determination, regardless of whether the defendant presents evidence of mitigation, the state may present any evidence that demonstrates that the defendant should not be shown leniency including any evidence regarding the defendant's character, propensities, criminal record or other acts." 2012 Ariz. Sess. Laws ch. 207, § 3 (2nd Reg. Sess.).

6

entire statutory scheme's constitutionality.
*Prince*, 226 Ariz. at 527 ¶ 20, 250 P.3d at 1156.

**¶11**    The trial court did not err by allowing the State to introduce evidence of Nordstrom's four felony murders or the fact that he was on parole when he committed the murders. The facts surrounding the two first degree murders, as well as Nordstrom's felony murders, were relevant to whether Nordstrom deserved leniency. *See State v. Pandeli*, 215 Ariz. 514, 529 ¶¶ 52-53, 161 P.3d 557, 571-72 (2007) (upholding admission of evidence of a murder in a separate incident as relevant to whether defendant deserved leniency); *see also State v. Armstrong*, 218 Ariz. 451, 461 ¶ 38, 189 P.3d 378, 388 (2008).

**¶12**    The evidence, moreover, was not unduly prejudicial. At the penalty phase, the State introduced photographs of the victims and presented witnesses who described the crime scenes. Testimony is not unduly prejudicial where "[t]he witnesses simply provided details of the crime scene and described . . . injuries." *Pandeli*, at 529 ¶ 53, 161 P.3d at 571 (finding trial court did not abuse its discretion by admitting evidence of murder in separate incident).

**¶13**    Nordstrom also argues that admission of evidence about the felony murders violated due process, contending that we have held that "[e]vidence presented for rebuttal must be relevant to the mitigation proffered." *State v. Boggs*, 218 Ariz. 325, 339

7

¶ 65, 185 P.3d 111, 125 (2008); *see also State v. Hampton*, 213 Ariz. 167, 180 ¶ 51, 140 P.3d 950, 963 (2006). Although these cases appropriately limit the scope of evidence that the state may present to rebut mitigation presented by the defense, neither their holdings nor the due process clause preclude the state from offering evidence of the circumstances of the crime when the defendant does not present any mitigation.

¶14    Nordstrom also contends the trial court erred by barring him from introducing trial transcripts from his 1998 trial to rebut the State's penalty phase evidence. Nordstrom characterized the transcripts as "innocence related evidence" and did not proffer guilt phase evidence for other purposes.

¶15    The trial court determined that the transcripts were evidence of residual doubt. "[A] defendant has no constitutional right to present residual doubt evidence at sentencing." *State v. Moore*, 222 Ariz. 1, 20 ¶ 109, 213 P.3d 150, 169 (2009); *see also State v. Harrod* (*Harrod III*), 218 Ariz. 268, 281 ¶ 46, 183 P.3d 519, 532 (2008).

¶16    Nordstrom attempts to distinguish *Moore* and similar cases by arguing that they involved situations in which the defendant sought to introduce residual doubt evidence at the penalty phase that had not been presented at the guilt phase. He also notes that his "innocence related evidence" concerned not only the Noel and Hardman murders, but also the four felony

murders and other related crimes. These distinctions are not persuasive. This Court has observed that "there is no constitutional requirement that the sentencing proceeding jury revisit the prior guilty verdict by considering evidence of 'residual doubt'." *State v. Ellison*, 213 Ariz. 116, 136 ¶ 82, 140 P.3d 899, 919 (2006). This observation applies equally to guilt phase evidence offered solely to show the defendant's innocence of the crimes for which the death penalty is sought and related crimes for which the defendant was concurrently convicted.

## B.    Prosecutorial Misconduct

¶17    Nordstrom argues that the trial court violated his rights under the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 2, Section 10 of the Arizona Constitution by refusing to grant a pretrial evidentiary hearing on his motion to dismiss on grounds of prosecutorial misconduct. We review constitutional issues de novo. *Roque*, 213 Ariz. at 217 ¶ 89, 141 P.3d at 392.

¶18    In 2006, Nordstrom moved to dismiss the indictment or, alternatively, to preclude the death penalty, based on prosecutorial misconduct discovered after the former prosecutor died. The alleged misconduct principally concerned that prosecutor's failure to disclose information that Nordstrom contends would have impeached testimony by David Nordstrom or

9

other witnesses.  The State opposed the motion, disputing many of Nordstrom's allegations.  The State also argued that Nordstrom had already litigated some of the issues and that he could raise others only in a Rule 32 petition for post-conviction relief.  The trial court ruled that it lacked jurisdiction to consider the merits of Nordstrom's arguments and that the Double Jeopardy Clauses did not bar the resentencing.

¶19    The trial court did not have jurisdiction on remand to consider Nordstrom's attacks on the validity of his convictions. This Court affirmed Nordstrom's convictions on direct appeal in *Nordstrom I*, later vacated only his death sentences, and remanded the case solely for resentencing by a jury.  *See Nordstrom II*, 206 Ariz. at 248 ¶ 28, 77 P.3d at 46.  The remand order did not encompass consideration of guilt phase issues.

¶20    Nor did the resentencing violate double jeopardy.  "A capital defendant whose original sentence is vacated on appeal can be resentenced to death so long as the defendant has not been 'acquitted' of the death sentence."  *State v. Ring (Ring III)*, 204 Ariz. 534, 551 ¶ 40, 65 P.3d 915, 932 (2003).

¶21    Nordstrom relies on *State v. Minnitt*, 203 Ariz. 431, 55 P.3d 774 (2002), to argue that double jeopardy prevents him from being resentenced to death because his convictions were obtained by intentional prosecutorial misconduct.  *Minnitt*, however, is not apposite.  In that case, we held that the Double

10

Jeopardy Clause barred a retrial of the guilt phase after the state had intentionally used perjured testimony in a trial ending with a hung jury. *Id.* at 440 ¶ 45, 55 P.3d at 783. In contrast, Nordstrom did not face a retrial of the guilt phase, and the record does not establish that the prosecution knowingly used perjured testimony.

¶22    The trial court correctly ruled that Nordstrom would need to seek relief under Rule 32 to pursue his claims that prosecutorial misconduct discovered after his direct appeal should invalidate his convictions. *Cf. Nordstrom I*, 200 Ariz. at 255 ¶¶ 89-91, 25 P.3d at 743 (affirming trial court's denial of Rule 24.4 motion to vacate and noting that claims of newly discovered impeachment evidence could be raised in Rule 32 proceeding). We of course do not address the merits of those claims or whether any of them may be precluded under Rule 32.2.

**C.    Denial of Rule 24 Motion**

¶23    Nordstrom argues that, after the jury determined he should receive death sentences, the trial court erred by declining to rule on his motion to vacate the judgment.

¶24    In September 2009, after the jury resentencing verdicts, the trial court entered judgment and sentenced Nordstrom to death. Nordstrom filed a Rule 24.2 motion to vacate the judgment, arguing that evidence of prosecutorial misconduct was "newly discovered material evidence" that

11

rendered his previous convictions invalid. The trial court denied this motion, concluding that it was untimely.

¶25    Rule 24.2 provides:

> Upon motion made no later than 60 days after the entry of judgment and sentence but before the defendant's appeal, if any, is perfected, the court may vacate the judgment on any of the following grounds:
> (1)  That it was without jurisdiction of the action;
> (2)  That newly discovered material facts exist, under the standards of Rule 32.1; or
> (3)  That the conviction was obtained in violation of the United States or Arizona Constitutions.

Ariz. R. Crim. P. 24.2(a) (2012); *see also id.* cmt. ("Rule 24.2 sets the time limit of 60 days for such motions; after that the defendant may only petition for relief under Rule 32.").

¶26    Judgment was entered on Nordstrom's convictions in May 1998. We affirmed his convictions in *Nordstrom I* and later vacated only the death sentences. When the trial court entered a judgment resentencing Nordstrom in 2009, it did not enter new judgments on the convictions, but only imposed new sentences. Thus, the validity of the convictions was not before the trial court in 2009, and Nordstrom's Rule 24.2 motion to vacate was untimely. *See State v. Dann*, 220 Ariz. 351, 360 ¶ 26, 207 P.3d 604, 613 (2009) (refusing to address on appeal from resentencing whether defendant's murder convictions were void after convictions were affirmed).

### D.    Due Process Rights

¶27    Nordstrom makes several interrelated arguments that

12

the trial court erred by preventing him from challenging the convictions that served as the (F)(1) aggravators for the two murders. We review constitutional claims de novo. *Roque*, 213 Ariz. at 217 ¶ 89, 141 P.3d at 392. Exclusion of evidence is reviewed for an abuse of discretion. *Lehr*, 227 Ariz. at 147 ¶ 19, 254 P.3d at 386.

**¶28** Nordstrom first argues that Rule 13.5(c) entitled him to have a neutral magistrate adjudicate the "legal sufficiency" of the (F)(1) aggravators. Under Rule 13.5(c), a defendant is entitled to require the state to establish probable cause for an alleged aggravating factor before it is submitted to a jury. *Chronis v. Steinle*, 220 Ariz. 559, 562 ¶¶ 15, 18, 208 P.3d 210, 213 (2009). Here, on remand, the trial court reviewed the evidence and found probable cause to try Nordstrom on the (F)(1) aggravators, noting that this Court had affirmed Nordstrom's premeditated murder convictions and the original findings of the (F)(1) aggravators on direct appeal in *Nordstrom I* and later in *Nordstrom II*. Thus, Rule 13.5 was satisfied.

**¶29** Nordstrom also alleges that his underlying convictions were constitutionally invalid because they were obtained by prosecutorial misconduct, and therefore the (F)(1) aggravators based on these convictions were also invalid. But when the case was remanded for resentencing of the capital murder convictions, Nordstrom was not entitled to collaterally attack the validity

13

of the convictions that were affirmed on direct appeal. "[W]here . . . the conviction is valid on its face, the defendant is precluded from attempting to undermine the validity of the conviction by collateral attack." *State ex rel. Collins v. Superior Court*, 157 Ariz. 71, 75, 754 P.2d 1346, 1350 (1988); *see also State v. Gretzler (Gretzler I)*, 128 Ariz. 583, 585-86, 627 P.2d 1081, 1083-84 (1981) (prior convictions not void because no violation of *Boykin v. Alabama*, 395 U.S. 238 (1969), was apparent in acceptance of guilty pleas).

¶30　　　Nordstrom alternatively argues that the trial court should have permitted him to rebut the State's case during the aggravation phase by allowing him to present evidence of his alibi and prosecutorial misconduct (that is, the alleged non-disclosure of impeachment material). This argument, however, merely recasts his arguments that he should have been allowed, on re-sentencing, to introduce residual doubt evidence.

¶31　　　Finally, Nordstrom argues that the trial court abused its discretion by declining to strike the first panel of prospective jurors after the court revealed to them that Nordstrom had been convicted of four murders in addition to the two for which the State was pursuing death sentences. Nordstrom, however, does not identify how the jury was prejudiced, given that the four felony murder convictions were properly admitted as evidence in the penalty phase. Moreover,

14

to determine if the prospective jurors could be fair and impartial, the trial judge needed to apprise them about the facts of the case, which included Nordstrom's convictions for four murders in addition to the Hardman and Noel murders.

### E. Contemporaneous Convictions

¶32 The (F)(1) aggravating circumstance exists when the "defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable." A.R.S. § 13-751(F)(1). Nordstrom argues that this Court should strike the (F)(1) aggravating circumstance for the Hardman and Noel murders because the legislature did not intend that contemporaneous convictions would establish this aggravator. We review matters of statutory interpretation de novo. *Roque*, 213 Ariz. at 217 ¶ 89, 141 P.3d at 392.

¶33 In 2003, the legislature amended A.R.S. § 13-751(F)(2) to explicitly allow "offenses committed on the same occasion" or offenses "not committed on the same occasion, but consolidated for trial with the homicide" to establish the (F)(2) aggravating circumstance. 2003 Ariz. Sess. Laws, ch. 255, § 1 (1st Reg. Sess.) The legislature did not similarly amend A.R.S. § 13-751(F)(1). Nordstrom infers that the legislature therefore intended that contemporaneous convictions could not establish the (F)(1) aggravating circumstance.

15

¶34    We disagree.  "As long as the prior conviction is entered before the sentencing hearing, the conviction may support the (F)(1) aggravator even if it is committed before, contemporaneously with, or after the capital homicide."  *State v. Tucker*, 215 Ariz. 298, 320 ¶ 98, 160 P.3d 177, 199 (2007); *see also State v. Gretzler (Gretzler II)*, 135 Ariz. 42, 57 n.2, 659 P.2d 1, 16 n.2 (1983).  Relying in part on the (F)(1) aggravating circumstance, we previously upheld six death sentences for Nordstrom's co-participant in the Smoke Shop and Union Hall murders.  *Jones*, 197 Ariz. at 314 ¶ 82, 4 P.3d at 369.  Although the six murders did not occur in one incident, we concluded that "because each set of murders provides a sufficient basis for finding the factor as to the other set of murders, we find the F.1 factor proven beyond a reasonable doubt."  *Id*. at 311 ¶ 63, 4 P.3d at 366.  Similar reasoning applies here.

¶35    Although the legislature amended the (F)(2) aggravator in 2003 to explicitly include contemporaneous convictions, the amendment does not reflect an intent to exclude contemporaneous convictions from serving as an (F)(1) aggravator.  Instead, the 2003 amendment evidently was intended to displace our ruling in *State v. Rutledge*, 206 Ariz. 172, 175-78 ¶¶ 15–25 & n.3, 76 P.3d 443, 446–49 & n.3 (2003), which held that crimes occurring during the same course of events as the murder could not serve

16

as (F)(2) qualifying serious offenses. The legislature did not need to similarly amend (F)(1) because this Court had previously approved the use of concurrent convictions to establish the (F)(1) aggravator. *See Jones*, 197 Ariz. at 310-11 ¶¶ 60-63, 4 P.3d at 365-66.

### F.        Rule 20 Motion

¶36        Nordstrom argues that the trial court erroneously denied his Rule 20 motion for judgment of acquittal after the State failed to present evidence that life imprisonment or death were imposable sentences for the murders of Hardman and Noel. The trial court instructed the jury that these murders were subject to such penalties. Nordstrom contends that the judge erroneously relieved the State of its duty to prove every element of the (F)(1) aggravator. The trial court's denial of a Rule 20 motion is reviewed de novo. *State v. West*, 226 Ariz. 559, 562 ¶ 15, 250 P.3d 1188, 1191 (2011).

¶37        The statutory sentencing range for crimes is a matter of law rather than fact and does not require a jury finding. *See State v. Moody*, 208 Ariz. 424, 470 ¶ 216, 94 P.3d 1119, 1165 (2004). The State was not obligated to present testimony or other evidence proving matters of law such as statutory sentencing ranges. Thus, the court appropriately instructed the jury that Nordstrom's convictions for premeditated murder were punishable by sentences of life imprisonment or death.

17

### G.      Individualized Sentencing

**¶38** Nordstrom argues that he was denied his right to an individualized sentencing because the trial court did not allow him to present any of the guilt phase evidence, including the trial transcripts consisting of alibi and innocence-related evidence, to the new sentencing jury. We review constitutional claims de novo. *Roque*, 213 Ariz. at 217 ¶ 89, 141 P.3d at 392.

**¶39** In challenging the exclusion of evidence from the aggravation and penalty phases, Nordstrom does not identify any guilt phase evidence other than the residual doubt evidence. As discussed above, the trial court properly precluded Nordstrom from presenting guilt phase evidence to show residual doubt. "During the aggravation and penalty phase, a jury may not revisit its initial guilty verdict. The only issue at the aggravation phase is whether any aggravating circumstances have been proved; the only issue during the penalty phase is whether death is the appropriate sentence." *Anderson*, 210 Ariz. at 348 ¶ 86, 111 P.3d at 390.

### H.      Victim Photographs

**¶40** Nordstrom argues that the trial court abused its discretion in allowing the State to introduce photographs of the crime scenes showing the victims' bodies. He claims the photographs were irrelevant because he did not present mitigation. Nordstrom also claims they were unduly prejudicial

because they served only to inflame the jurors. We review the admissibility of evidence for an abuse of discretion. *See State v. Spreitz*, 190 Ariz. 129, 141, 945 P.2d 1260, 1271 (1997).

**¶41** Photographs of the crime scenes showing the victims' bodies were relevant to show the circumstances of the two capital murders. As explained above, *supra* ¶ 12, the State was entitled to present evidence regarding those circumstances during the penalty phase even though Nordstrom chose not to present mitigation evidence. Nor does the record show that the photographs were offered only to inflame the jury or were otherwise unduly prejudicial. The photographs merely described the layout of each crime scene and identified the victims.

### I. Independent Review

**¶42** Because Nordstrom committed the murders before August 1, 2002, we must independently review his death sentences. *See* A.R.S. § 13-755(A).

### 1. Aggravating Circumstances

**¶43** The State proved the (F)(1) aggravator beyond a reasonable doubt for each murder. Witnesses testified that Nordstrom was convicted at his original trial of murdering Hardman and Noel, and the State also introduced copies of the jury verdicts. Each conviction was punishable by a sentence of life imprisonment or death, and each established the (F)(1) aggravator for the other premeditated murder.

## 2. Mitigating Circumstances

**¶44** Nordstrom presented no mitigation evidence and did not allocute. Although mitigation evidence may be found anywhere in the record, there is little evidence before this Court to suggest that Nordstrom is entitled to leniency.

**¶45** When Nordstrom was originally sentenced to death in 1998, the trial judge found that he had not proved any statutory mitigating circumstances, but had proved two non-statutory mitigators: "employment history" and "caring family and parent relationships." The trial court also noted that Nordstrom had no prior convictions for serious offenses, but did not find this mitigating given Nordstrom's convictions in this case for multiple murders on different occasions. *Nordstrom I*, 200 Ariz. at 256-57 ¶ 97, 25 P.3d at 744-45.

**¶46** The State argues that we should not consider mitigation evidence that was not introduced at the 2009 resentencing. "In our independent review of aggravating circumstances, we have declined to consider evidence that the sentencing jury did not hear," *Lehr*, 227 Ariz. at 155 ¶ 80, 254 P.3d at 394, and the State argues that we should treat mitigating evidence similarly. Even if we consider the evidence from the 1998 sentencing, however, we find it is not significantly mitigating.

20

### 3. Propriety of Death Sentence

¶47      In reviewing the propriety of the death sentence, we consider the quality and the strength, not simply the number, of aggravating and mitigating factors.  *State v. Greene*, 192 Ariz. 431, 443 ¶ 60, 967 P.2d 106, 118 (1998).  Nordstrom murdered Hardman in a robbery in which he killed another person, and he was eligible for a death sentence because he was previously convicted of the premeditated murder of Noel in a different robbery.  He was on parole when he committed the murders, and he presented no mitigation at the resentencing.  Under the circumstances, "the mitigation is not sufficiently substantial to warrant leniency."  A.R.S. § 13-755(B).  The same conclusion applies with respect to the murder of Noel, which Nordstrom committed in a robbery in which three others were murdered.

### J.      Preservation of Issues for Federal Review

¶48      To avoid preclusion, Nordstrom lists twenty additional constitutional claims that he states have been rejected in previous decisions.  The appendix lists these claims and the decisions Nordstrom identifies as rejecting them.

### CONCLUSION

¶49      We affirm Nordstrom's sentences.

_____

Scott Bales, Vice Chief Justice

21

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice


_____
Maurice Portley, Judge*


\* Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Maurice Portley, Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.

**APPENDIX**

Nordstrom raises twenty issues to preserve them for federal review. This Appendix lists verbatim his claims and the decisions he identifies as rejecting them.

1.    The prosecutor's discretion to seek the death penalty has no standards and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Sections 1, 4, and 15 of the Arizona Constitution. *See State v. Cromwell*, 211 Ariz. 181, 192, 119 P.3d 449, 459 (2005).

2.    Arizona's death penalty is applied so as to discriminate against poor, young, and male defendants whose victims have been Caucasian, in violation of the Eighth and Fourteenth Amendments and Article 2, Sections 1, 4, and 13 of the Arizona Constitution. *See State v. West*, 176 Ariz. 432, 455, 862 P.2d 192, 215 (1993).

3.    The death penalty is cruel and unusual under any circumstances and violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Section 15 of the Arizona Constitution. *See State v. Harrod*, 200 Ariz. 309, 26 P.3d 492 (2001).

4.    Execution by lethal injection is per se cruel and unusual punishment. *State v. Van Adams*, 194 Ariz. 408, 422, 984 P.2d 16, 30 (1999); *State v. Hinchey*, 161 Ariz. 307, 315, 890 P.2d 602, 610 (1996).

5.    Arizona's death penalty statute unconstitutionally requires defendants to prove that their lives should be spared. *State v. Fulminante*, 161 Ariz. 237, 258, 779 P.2d 602, 623 (1988).

6.    Arizona's death penalty statute unconstitutionally requires imposition of the death penalty whenever at least one aggravating circumstance and no mitigating circumstances exist. *State v. Miles*, 186 Ariz. 10, 19, 918 P.2d 1028, 1037 (1996).

7.    The statute unconstitutionally fails to require the cumulative consideration of multiple mitigating factors or require specific findings to be made as to each factor.

23

*State v. Gulbrandson*, 184 Ariz. 46, 69, 906 P.2d 579, 602 (1995).

8.    The death penalty is unconstitutional because it permits jurors unfettered discretion to impose death without adequate guidelines. *State v. Johnson*, 212 Ariz. 425, 133 P.3d 735, 750 (2006).

9.    The statute is unconstitutional because there are not statutory standards for weighing. *State v. Atwood*, 171 Ariz. 576, 645-46, 832 P.2d 693, 662-63 (1992).

10.    The statute insufficiently channels the sentencer's discretion in imposing the death sentence. *State v. Greenway*, 170 Ariz. 151, 164, 823 P.2d 22, 31 (1991).

11.    Appellant claims that a proportionality review of a defendant's death sentence is constitutionally required. *State v. Gulbrandson*, 184 Ariz. 46, 73, 906 P.2d 579, 606 (1995).

12.    Appellant claims that the State's failure to allege an element of a charged offense, the aggravating factors that made the defendant death eligible, is a fundamental defect that renders the indictment constitutionally defective. *McKaney v. Foreman*, 209 Ariz. 268, 271, 100 P.3d 18, 21 (2004).

13.    Appellant asserts that the application of the new death penalty statute passed in response to *Ring v. Arizona*, 536 U.S. 584 (2002), violates a defendant's right against ex post facto application of new laws. *State v. Ring*, 204 Ariz. 534, 547, 65 P.3d 915, 928 (2003).

14.    Subjecting Appellant to a new trial on the issues of aggravation and punishment before a new jury violated the double jeopardy clause of the Fifth Amendment. *State v Ring*, 204 Ariz. 534, 547, 65 P.3d 915, 928 (2003).

15.    Arizona's statutory scheme for considering mitigating evidence is unconstitutional because it limits full consideration of that evidence. *State v. Mata*, 215 Ariz. 233, 242, 609 P.3d 48, 57 (1980).

16.    The absence of notice of aggravating factors prior to Appellant's guilt phase trial violates the Sixth, Eighth, and Fourteenth Amendments. *State v. Anderson*, 210 Ariz.

24

327, 347, 111 P.3d 369, 389 (2005).

17.    The reasonable doubt jury instruction at the aggravation phase lowered the burden of proof and deprived Appellant of his right to a jury trial and due process under the Sixth and Fourteenth Amendments. *State v. Dann*, 205 Ariz. 557, 575, 74 P.3d 231, 249 (2003).

18.    Subjecting Appellant to a new trial on the issues of aggravation and punishment before a new jury violated the due process clause of the Fourteenth Amendment. *State v. Ellison*, 213 Ariz. 116, 137, 140 P.3d 899, 920 (2006).

19.    Requiring the jury to unanimously determine whether the mitigating factors were sufficiently substantial to call for leniency violated the Eighth Amendment. *State v. Ellison*, 213 Ariz. 116, 137, 140 P.3d 899, 920 (2006).

20.    Arizona's death statute creates an unconstitutional presumption of death and places an unconstitutional burden on Appellant to prove that mitigation is sufficiently substantial to call for leniency. *State v. Glassel*, 211 Ariz. 33, 52, 116 P.3d 1193, 1212 (2005).