IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee,*

*v.*

VINCENT JOSEPH GUARINO,
*Appellant.*

No. CR-13-0405-AP
Filed December 3, 2015

Appeal from the Superior Court in Maricopa County
The Honorable Karen L. O'Connor, Judge
No. CR2010-120027
**AFFIRMED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Lacey Stover Gard, Chief Counsel, Capital Litigation Section, Susanne Bartlett Blomo, Assistant Attorney General, Phoenix, Laura P. Chiasson (argued), Tucson, Attorneys for State of Arizona

Richard D. Gierloff (argued), Law Offices of Richard D. Gierloff, P.C., Phoenix, Attorney for Vincent Joseph Guarino

JUSTICE BERCH (RETIRED) authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL and TIMMER joined.

JUSTICE BERCH (RETIRED), opinion of the Court:

¶1          Vincent Joseph Guarino was convicted of the kidnapping, assault, and murder of Chad Rowe, among other crimes. This automatic appeal follows the imposition of the death penalty. Ariz. R. Crim. P. 31.2(b).

We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 13-4031.

## I. BACKGROUND[1]

**¶2** To secure membership in the Aryan Brotherhood, a criminal gang, Defendant Vincent Guarino ("Guarino") sought to murder Chad Rowe. Accompanied by his brother Frank Guarino ("Frank"), Guarino went to a home in north Phoenix. Guarino entered, found Chad, and brought him out at gunpoint. The three men drove away in a truck. Chad's body was later found in a residential street. He had been stabbed in the hand and foot and shot three times.

**¶3** During a police interview, Frank confessed to participating in the murder and told officers of his brother's involvement. Guarino did not confess during police interviews, but officers later intercepted a letter in which he admitted murdering Chad Rowe.

## II. DISCUSSION

### A. Frank's Statements

**¶4** During the penalty phase of Guarino's trial, the State introduced statements from Frank's interview. Guarino argues that the admission of those statements violated Arizona Rules of Evidence 401 and 403, A.R.S. § 13-751(G), and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

**¶5** Because Guarino objected to the admission of Frank's statements on grounds of relevance and undue prejudice, we review the rulings on those objections for an abuse of discretion. *See State v. Nordstrom*, 230 Ariz. 110, 114 ¶ 8, 280 P.3d 1244, 1248 (2012). We review the constitutional issues de novo. *State v. Moody*, 208 Ariz. 424, 445 ¶ 62, 94 P.3d 1119, 1140 (2004).

---

[1] We view the facts in the light most favorable to sustaining the jury's verdicts. *See State v. Chappell,* 225 Ariz. 229, 233 ¶ 2 n.1, 236 P.3d 1176, 1180 n.1 (2010).

*1.        Arizona Rules of Evidence 401 and 403*

¶6        Guarino argues that the trial court abused its discretion in admitting evidence of Frank's statements recounting the events preceding Chad's death because they were "irrelevant or cumulative and unfairly prejudicial under Rule 403." Although the rules of evidence do not apply during the penalty phase of a capital trial, Arizona statutes provide that the state may only introduce evidence that is "relevant to any of the mitigating circumstances," A.R.S. § 13-751(C), or that tends to show that the defendant should not be shown leniency. A.R.S. § 13-752(G). We have held that whether evidence falls within these categories is guided by "fundamentally the same considerations as . . . a relevancy determination under Arizona Rule of Evidence 401 or 403." *State v. McGill*, 213 Ariz. 147, 157 ¶ 40, 140 P.3d 930, 940 (2006).

¶7        At the aggravation phase of the trial, Guarino attempted to defeat the § 13-751(F)(6) "cruelty" aggravator by arguing that no one knew what happened in the truck—that is, who (Frank or Guarino) did what to the victim. From this, he urged the jury not to find the murder especially cruel. The jury nonetheless found the cruelty aggravator established beyond a reasonable doubt. In the penalty phase, the State presented statements from Frank's interview, which described events in the truck, to counter Guarino's suggestion that he should be shown leniency because Frank inflicted most of the harm to the victim.

¶8        Guarino's participation in harming the victim and in the murder itself were important considerations in the penalty phase. Frank's statements implicated Guarino as a major participant and, in fact, provided evidence that he actually killed the victim. The statements also rebutted Guarino's mitigation claim that Frank or other members of the Aryan Brotherhood influenced him to commit the murder. Frank's statements were therefore relevant to whether Guarino deserved leniency. *See* A.R.S. § 13-752(G) ("[T]he state may present any evidence that is relevant to the determination of whether there is mitigation that is sufficiently substantial to call for leniency," including "any evidence that demonstrates that the defendant should not be shown leniency."). Moreover, in the penalty phase, the prosecution may present such relevant information "regardless of its admissibility under the rules governing admission of evidence at criminal trials." A.R.S. § 13-751(C). The court did not abuse its discretion

in finding the evidence relevant.

¶9        Guarino nonetheless argues that, even if relevant, the evidence was unfairly prejudicial and so should have been precluded under Rule 403. *See State v. Schurz*, 176 Ariz. 46, 52, 859 P.2d 156, 162 (1993) (noting that relevant evidence "may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice"). But while evidence that makes a defendant look bad may be prejudicial in the eyes of jurors, it is not necessarily unfairly so. *Id.* That is the case here. The trial judge acted within her discretion in so ruling.

¶10       Having already established the relevance of the evidence, the lack of unfair prejudice, and the absence of abuse in the trial court's ruling allowing the testimony, we need not analyze for harmless error.

### 2.       *A.R.S. §§ 13-751(G) and -752(G)*

¶11       Guarino next asserts that the trial court violated A.R.S. § 13-751(G) by admitting Frank's statements because they did not relate to mitigation and were admissible, if at all, only to help prove "the especially cruel (F)(6) aggravator[,] which had already been found by the jury." He contends that the "only section in the capital sentencing scheme [that] mentions considering the defendant's character or the circumstances of the offense"—and hence in his view the only section permitting evidence relating to the defendant's character or the circumstances of the crime—"is § 13-751(G), the section of the statute [that] authorizes mitigation evidence." From this premise, he reasons that the prosecution may not present any evidence about the defendant's character unless it is mitigating.

¶12       We have previously rejected this argument. *See, e.g.*, *State v. Carlson*, 237 Ariz. 381, 396 ¶¶ 53–54, 351 P.3d 1079, 1094 (2015); *State v. Ovante*, 231 Ariz. 180, 187 ¶¶ 31–32, 291 P.3d 974, 981 (2013). Although § 13-751 requires the jury to consider all the mitigation presented by either the defense or the state, it does not bar the jury from considering relevant evidence that does not serve as mitigation. *See Carlson*, 237 Ariz. at 396 ¶ 54, 351 P.3d at 1079. Furthermore, § 13-752(G) expressly allows the state to present evidence "that demonstrates that the defendant should *not* be shown leniency." *Id.* (emphasis added). That was the State's apparent purpose in presenting Frank's interview statements.

¶13 Taken together, A.R.S. §§ 13-751(G) and -752(G) permit jurors to hear evidence relating to circumstances of the crime and the defendant's character, which they must do to fulfill their "duty to evaluate all the relevant evidence when determining the defendant's sentence." *Carlson*, 237 Ariz. at 396 ¶ 54, 351 P.3d at 1094; *see also Gregg v. Georgia*, 428 U.S. 153, 190 (1976) ("[A]ccurate sentencing information is an indispensable prerequisite to a reasoned determination of whether a defendant shall live or die . . . ."). The facts establishing an aggravating circumstance, or the circumstances of the murder more generally, "are relevant during the penalty phase because they tend to show whether the defendant should be shown leniency." *State v. Armstrong*, 218 Ariz. 451, 461 ¶ 38, 189 P.3d 378, 388 (2008). Such facts were therefore admissible during the penalty phase to help the jurors evaluate the appropriate sentence. They were not offered to "re-prove" the (F)(6) aggravating factor, and their admission did not violate A.R.S. § 13-751(G).

¶14 Guarino also asserts that Arizona's penalty phase scheme violates the federal Constitution because the broad rules of admissibility in that phase, when combined with the absence of safeguards usually provided by the evidentiary rules during the penalty phase, fail to adequately channel jurors' discretion to impose the death penalty. *See Gregg*, 428 U.S. at 196–98. We disagree. Guarino has not specified how rules of admissibility frustrate the duty to channel jurors' discretion or fail to help them distinguish those defendants who are death eligible from the class of defendants convicted of first degree murder generally. He does not address the instructions given to the jury, which adequately channeled the jury's decision-making process in the penalty phase. Thus, permitting the testimony in this case under A.R.S. §§ 13-751(C), -751(G), and -752(G) did not violate the Constitution by failing to adequately channel the jury's discretion.

### 3. *Due Process*
¶15 Guarino argues that the admission of Frank's statement violated his due process rights. We have stated that due process concerns constrain the introduction of evidence in the penalty phase. *See State v. Prince*, 226 Ariz. 516, 526 ¶ 17, 250 P.3d 1145, 1155 (2011) (observing that "§ 13-752(G) permits any evidence probative on [whether the defendant should be shown leniency], subject only to due process limitations"). "In

the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). It is therefore conceivable that the state could seek to introduce evidence, not subject to Arizona's rules of evidence, that is relevant and admissible under § 13–752(G), but nonetheless violates the Constitution for other reasons. *Cf. State v. Leteve*, 237 Ariz. 516, 529 ¶ 50, 354 P.3d 393, 406 (2015) (limiting community impact testimony to statements by those who are "immediately and closely connected to the victim" to avoid the risk of unfair prejudice).

¶16 But that is not the case here. Frank's statements directly related to the circumstances of the crime and also rebutted Guarino's assertions that Frank bore most of the responsibility for the murder and that members of the Aryan Brotherhood influenced his decision to kill the victim. The statements were not so unfairly prejudicial that they rendered the trial fundamentally unfair.

¶17 Moreover, the admission of hearsay statements does not violate the Due Process Clause if the defendant "receive[s] notice of any hearsay statements to be introduced by the State in rebuttal to mitigation and ha[s] 'an opportunity to either explain or deny them.'" *State v. Hampton*, 213 Ariz. 167, 179 ¶ 49, 140 P.3d 950, 962 (2006) (quoting *State v. Greenway*, 170 Ariz. 155, 161, 823 P.2d 22, 28 (1992)). And that is the case here. Guarino knew about Frank's statements at least from the time of the pretrial *Chronis* hearing, during which Detective Cisneros testified regarding Frank's confession. The State further indicated that it would introduce Frank's statements during the penalty phase when it presented its opening statement for that phase. The defense therefore had notice of the hearsay statements' content and the fact that the State intended to introduce them during the penalty phase.

¶18 Guarino also had some opportunity to challenge, explain, or deny Frank's statements when he cross-examined the testifying witness, Detective Cisneros. Although Guarino was not able to cross-examine the declarant himself, he was able to impeach Frank's statements during cross-examination by introducing Frank's criminal record and exploring with the testifying witness contradictions between the physical and testimonial

evidence. Moreover, Guarino does not argue that he could not have taken the stand to dispute Frank's statements. That he elected not to does not mean he did not have the chance to explain. *See Wohlstrom v. Buchanan*, 180 Ariz. 389, 392, 884 P.2d 687, 690 (1994) ("[A]lthough a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." (quoting *Crampton v. Ohio*, 402 U.S. 183, 213 (1971)). Guarino therefore did have sufficient opportunity to deny or explain Frank's statements. *United States v. Fields*, 483 F.3d 313, 329 (5th Cir. 2007) ("The Court has never said that the right to 'deny or explain' sentencing information includes . . . the right to see, hear, and cross-examine the sources of that information." (quoting John G. Douglas, *Confronting Death: Sixth Amendment Rights at Capital Sentencing*, 105 Colum. L. Rev. 1967, 1980 (2005))).

¶**19**       Finally, Guarino argues that Frank's hearsay statements lacked sufficient indicia of reliability. Hearsay is accompanied by sufficient indicia of reliability if it is corroborated by other evidence. *See McGill*, 213 Ariz. at 160–61 ¶ 58, 140 P.3d at 943–44. Frank's statements were corroborated by witness testimony and physical evidence. While Frank's version of events was not entirely consistent with the testimony of one witness and some of Chad's stab wounds were on different parts of the body than Frank's testimony indicated, Frank's statements were consistent with other witnesses' testimony and most of the physical evidence. Introduction of the evidence did not violate Guarino's Due Process rights.

### 4.    *The Confrontation Clause*

¶**20**       Guarino argues that introducing Frank's statements in the penalty phase violated the Sixth Amendment's Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 50–52 (2004). He acknowledges that we rejected a similar argument in *McGill*, 213 Ariz. at 158–59 ¶¶ 49–52, 140 P.3d at 941–42, but argues that *McGill* is distinguishable or should be overruled.

¶**21**       Guarino first attempts to distinguish *McGill* based on the declarant's availability to testify and status as a co-defendant. The declarants in *McGill* died before they were subject to cross-examination. 213 Ariz. at 156 ¶¶ 38–39, 140 P.3d at 939. Guarino points out that the defense could theoretically have deposed them before their deaths, while

in this case, Guarino could not have deposed Frank because Frank was a co-defendant who had invoked his Fifth Amendment rights. Guarino does not explain the relevance of that distinction, however. In both cases, the declarant was not available to the defense for a deposition or cross-examination. *See State v. Lavers*, 168 Ariz. 376, 388–89, 814 P.2d 333, 345–46 (1991) (indicating that a defendant with the "right not to testify" and a deceased declarant were both equally "unavailable" for purposes of the Confrontation Clause). In neither situation would the Confrontation Clause bar the introduction of the declarant's statements during the penalty portion of the trial because the Confrontation Clause does not apply during that phase. *McGill*, 213 Ariz. at 159 ¶ 52, 140 P.3d at 942. Guarino does not clarify how the cause or timing of the declarant's unavailability or the declarant's status as a co-defendant affects the reasoning or result in *McGill*. We therefore decline to reconsider *McGill*.

**¶22**        Guarino also attempts to distinguish *McGill* as "grounded in the analysis of aggravating factors as 'the functional equivalent of an element of a greater offense.'" But this argument is inapt. In *McGill*, the Court applied the "functional equivalent of an element" analysis to determine whether the state violated the defendant's double jeopardy rights. *See McGill*, 213 Ariz. at 153 ¶¶ 22, 25, 140 P.3d at 936. The Court analyzed the defendant's rights under the Confrontation Clause in a separate section of the opinion. *Id.* at 157–59 ¶¶ 45–52, 140 P.3d at 940–42. Guarino fails to elucidate how *McGill*'s double jeopardy analysis undermines or affects its confrontation analysis.

**¶23**        Guarino also argues that the use of the declarant's testimony in this case was less "foreseeable" than the testimony introduced in *McGill*. But he fails to cite any cases or explain why a statement's foreseeability is relevant to a Confrontation Clause analysis. Rather, whether Guarino had notice of the State's intent to introduce Frank's statements in the penalty phase is a factor to be considered in a due process analysis. *See Hampton*, 213 Ariz. at 179 ¶ 49, 140 P.3d at 962; *see also supra* ¶¶ 15–19 (addressing due process claim). The record reflects that Guarino knew of the existence and contents of Frank's statements, as the State introduced them at the *Chronis* hearing, and their use was foreseeable.

**¶24**        Guarino's other attempts to distinguish *McGill* are similarly

unpersuasive. We have affirmed *McGill* several times. *See, e.g., State v.* (*Gilbert*) *Martinez*, 230 Ariz. 208, 218 ¶ 54, 282 P.3d 409, 419 (2012); *State v. Chappell*, 225 Ariz. 229, 240 ¶ 40–41, 236 P.3d 1176, 1187 (2010); *State v. Bocharski*, 218 Ariz. 476, 490 ¶ 67, 189 P.3d 403, 417 (2008); *State v.* (*Cody J.*) *Martinez*, 218 Ariz. 421, 431 ¶ 44, 189 P.3d 348, 358 (2008). We have done so on three grounds that apply here with equal force: "(1) the penalty phase is not a criminal prosecution, (2) historical practices support the use of out-of-court statements in sentencing, and (3) the sentencing body requires complete information to make its determination." *McGill*, 213 Ariz. at 159 ¶ 52, 140 P.3d at 942.

**¶25** Alternatively, Guarino argues that *McGill* was wrongly decided and should be overruled. He urges that the dissent gave "the correct reading of the scope of the Confrontation Clause." He argues that the majority erred by relying upon *Williams v. New York*, 337 U.S. 241 (1949), rather than *Crawford v. Washington*, 541 U.S. 36 (2004). He then argues that Justice Scalia's concurrence in *Ring v. Arizona*, 536 U.S. 584 (2002), also indicates that "the *McGill* court's reliance on *Williams v. New York* with its distinction of 'sentencing' from 'trial' (with its requisite 6th Amendment protections) was error."

**¶26** Guarino's argument that the Court erred in relying on *Williams* is unpersuasive. *Crawford* did not overrule *Williams*, and we will continue to apply the earlier precedent. *See United States v. Littlesun*, 444 F.3d 1196, 1200 (9th Cir. 2006) (reminding courts "to apply controlling Supreme Court precedent" until the Court expressly overrules it). Guarino correctly observes that *Williams* was not a Confrontation Clause case because that clause did not apply to the states until 1965, *see Pointer v. Texas*, 380 U.S. 400, 403 (1965)—a fact that the majority and dissent both noted in *McGill*, *see* 213 Ariz. at 158, ¶ 47 n.4, 140 P.3d at 941 (majority op.); *id.* at 165 ¶ 93, 140 P.3d at 948 (Hurwitz, J., concurring in part and dissenting in part). *Williams* is, instead, a due process case, but it remains "the only case in which the United States Supreme Court directly addressed a defendant's right to confront witnesses during sentencing." *Id.* at 158 ¶ 47, 140 P.3d at 941. Absent contrary authority by the Supreme Court, we continue to hold that the Confrontation Clause does not apply during the penalty phase of a capital trial.

**¶27**      Finally, Guarino's reliance on Justice Scalia's concurrence in *Ring v. Arizona* is misplaced.   In *Ring*, Justice Scalia wrote that "the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives . . . must be found by the jury beyond a reasonable doubt."  536 U.S. at 610 (Scalia, J., concurring).  While the right to a jury trial and the Confrontation Clause are both housed in the Sixth Amendment, they are distinct rights.   Guarino does not argue that his right to a jury trial was infringed here.

**¶28**      In short, our decision in *McGill* remains consistent with the decisions of a majority of federal circuit courts as well as several state courts that have considered this issue.  *See Littlesun*, 444 F.3d at 1200 & n.15 (collecting cases); *People v. Banks*, 934 N.E.2d 435, 461–62 (Ill. 2010) (same). Guarino does not offer any compelling reason or new authority indicating why this Court should reverse *McGill* on this issue, and we decline to do so. *See* 213 Ariz. at 159 ¶ 52, 140 P.3d at 942 ("We will overturn long-standing precedent only for a compelling reason . . . .").

**¶29**      The trial court did not violate the Confrontation Clause when it admitted Frank's statements during the penalty phase.

### B.      Gang Expert Testimony

**¶30**      Guarino argues that testimony by Detectives Justus and Egea violated the Confrontation Clause as interpreted in *Crawford* because it "was based on testimonial hearsay given in anticipation of litigation against a class of defendants[:] gang members, either aspirational or fully vested." He asserts that "[e]very fact upon which these Detectives base their expertise upon [*sic*] can ultimately be traced back to debriefings, free talks, wire taps, letter interceptions or learned in an undercover capacity" and that any facts learned from other sources were "inextricably intertwined" with "[t]he facts learned from debriefings and free talks."

**¶31**      Absent an objection, we review a trial court's admission of expert testimony for fundamental error, *Carlson*, 237 Ariz. at 390 ¶ 23, 351 P.3d at 1088, which requires that, in addition to finding error of that magnitude, the court must find that the defendant suffered prejudice as a result, *State v. Henderson*, 210 Ariz. 561, 567 ¶ 20, 115 P.3d 601, 607 (2005).

¶32 As a preliminary matter, Guarino argues that the gang members' statements are testimonial hearsay. We have yet to directly address this issue, and therefore look to the federal courts for guidance. *Carlson*, 237 Ariz. at 392 ¶ 32, 351 P.3d at 1090 (approving reference to federal court opinions); *see* Ariz. R. Evid. prefatory cmt. to 2012 amends. ("Where the language of an Arizona rule parallels that of a federal rule, federal court decisions interpreting the federal rule are persuasive but not binding with respect to interpreting the Arizona rule.").

¶33 Even if the undisclosed background statements relied on by the detectives qualify as testimonial hearsay, "that fact alone does not offend the Confrontation Clause," *United States v. Ayala*, 601 F.3d 256, 275 (4th Cir. 2010), because "there is generally no *Crawford* problem when an expert 'appli[es] his training and experience to the sources before him and reach[es] an independent judgment.'" *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014) (quoting *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013)). Rather, the rules of evidence expressly allow experts to base opinions on otherwise inadmissible facts or data if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *See* Ariz. R. Evid. 703. It is only when an expert's testimony serves "as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation," that the admission of the testimonial hearsay as the basis for an expert's opinion violates the Confrontation Clause. *Vera*, 770 F.3d at 1237 (quoting *Gomez*, 725 F.3d at 1129).

¶34 In *Vera*, the detective "had extensive training about and experience with gangs, including some formal classroom training, his time on the Santa Ana Gang Task Force[,] and his work at the Santa Ana Police Department as a gang homicide investigator and gang suppression detective." *Id.* at 1239. Because the officer based his expert testimony on his experience and observations with the gang in question, the court held that he was not a mere conduit for gang members' statements. *Id.*

¶35 Here, similarly, Detectives Justus and Egea based their opinions on trainings, observations, and experiences that collectively formed the bases for their expertise, and neither detective served as a mere

conduit for gang members' statements. To establish the foundation for his testimony regarding the Aryan Brotherhood, Detective Justus testified that his knowledge and experience were based on a wide range of sources, including supervised training in the field, working as an undercover officer in frequent contact with gang members, attending and instructing at seminars on gang-related activity, collaborating with prison intelligence officials, debriefing gang members when they end their gang memberships, talking to gang members acting as informants, conducting wire taps, and intercepting and reading gang members' mail. In total, Detective Justus testified that he had participated in hundreds of "investigations that involved the reviewing and use of inmate communications." His partner, Detective Egea, testified that he had similar experience and training.

¶36 Detectives Justus and Egea then testified about the origins of the Aryan Brotherhood, the legal definitions of a criminal street gang, some of the terminology used by the Aryan Brotherhood, the leadership structure of the Aryan Brotherhood, and the significance to the gang of certain tattoos and symbols. The only member of the Aryan Brotherhood either detective mentioned specifically was Robert R., who goes by the nickname "Chicago Bob," but neither detective mentioned anything that Robert R. or any other member of the Aryan Brotherhood ever said to another or told them directly.

¶37 Guarino nonetheless argues that the detectives' testimony was like the improper testimony of the detective in *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008). *Mejia*, however, is distinguishable. The detective in *Mejia* "simply summarize[d] an investigation by others that [was] not part of the record and present[ed] it in the guise of an expert opinion." 545 F.3d at 199 (internal citations and quotation marks omitted); *see also United States v. Palacios*, 677 F.3d 234, 244 (4th Cir. 2012) (stating that *Mejia* "turned upon the fact that the expert simply passed along an important testimonial fact he learned from a particular interview, which did not require him to apply any independent expertise" (internal citation and quotation marks omitted)). But, unlike the detective in *Mejia*, the detectives in this case did not merely convey out-of-court statements to the jury.

¶38 Instead, like the detective in *Vera*, Detectives Justus and Egea

applied their expertise and did not serve as "mere conduits" for admission of someone else's hearsay statements. Indeed, rather than having either detective speak on behalf of members of the Aryan Brotherhood, the State called an Aryan Brotherhood member to speak about the gang from a member's perspective. The detectives' testimony did not violate Guarino's Confrontation Clause rights. The admission of the detectives' testimony was therefore proper, and Guarino has failed to establish fundamental error.

### C. Constitutionality of the (F)(6) Aggravating Factor

**¶39** Guarino argues that the (F)(6) "especially cruel" factor violates the Eighth and Fourteenth Amendments because it does not adequately limit the sentencer's discretion when deciding whether to impose the death penalty, *see Gregg*, 428 U.S. at 196–98, and because "[t]he vast majority of Arizona cases [that] have upheld the (F)(6) factor as constitutional involved sentencing by judges, rather than juries." Guarino did not object to the constitutionality of the (F)(6) aggravator below. We therefore review his argument for fundamental error. *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

**¶40** We have previously rejected this argument. *State v. Anderson*, 210 Ariz. 327, 352–53 ¶¶ 109–14, 111 P.3d 369, 394–95, *supplemented by* 211 Ariz. 59, 116 P.3d 1219 (2005) (observing that the (F)(6) aggravator was sufficiently narrowed by jury instructions that "gave substance to the terms 'cruel' and 'heinous or depraved' in accordance with our case law narrowing and defining those terms"); *see also State v. Tucker*, 215 Ariz. 298, 310 ¶ 28, 160 P.3d 177, 189 (2007) ("The (F)(6) aggravator is facially vague but may be remedied with appropriate narrowing instructions, whether a judge or a jury makes the sentencing determination."). Guarino provides no reason for us to revisit those rulings. The trial judge did not commit fundamental error by allowing the jury to consider the (F)(6) aggravator under appropriate limiting instructions.

### D. Abuse of Discretion Review

**¶41** Although Guarino does not argue that the jurors erred in sentencing him to death, we are required to review a death sentence for an abuse of discretion. *State v. Morris*, 215 Ariz. 324, 340 ¶ 76, 160 P.3d 203, 219 (2007).

¶42 The State convicted Guarino of first degree murder and established four aggravating circumstances beyond a reasonable doubt. These aggravating factors were supported by substantial evidence. The defense urged the jury to grant Guarino leniency due to his age, mental illness, severe cognitive impairment, low IQ, dysfunctional family background, drug abuse, genetic propensity for drug addiction, genetic propensity for mental illness, lack of future dangerousness, good behavior during pretrial incarceration, love of family, good conduct during the trial, and ability to adapt to a prison environment. Guarino also presented evidence that he had been the victim of bullying, had suffered a personal tragedy, and had acted under the influence of Frank and other members of the Aryan Brotherhood.

¶43 Much of Guarino's presented mitigation could reasonably be given little weight by jurors or was heavily rebutted by the State. Thus, reasonable jurors might conclude, in light of the four aggravating circumstances, that the evidence was insufficient to warrant leniency, despite the mitigation evidence presented. The jury did not abuse its discretion when it declined to grant Guarino leniency.

## III. CONCLUSION

¶44 Guarino lists thirteen additional issues, which he acknowledges have previously been rejected by this Court, to preserve them for future review. We decline to revisit those issues.

¶45 We affirm Guarino's convictions and sentences.