**John WITHEROW, Plaintiff–Appellant,**

v.

**Marvin PAFF, et al., Defendants–Appellees.**

**No. 93–17068.**

United States Court of Appeals, Ninth Circuit.

Submitted April 4, 1995.*

Decided April 12, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34–4.

Donald York Evans, Reno, NV, for plaintiff-appellant.

Ronda Clifton, Deputy Atty. Gen., Carson City, NV, for defendants-appellees.

Before: BRUNETTI, THOMPSON, and HAWKINS, Circuit Judges.

PER CURIAM:

John Witherow, an inmate in the Nevada State prison system, filed this complaint pursuant to 42 U.S.C. § 1983. He alleges that defendants violated his constitutional rights by refusing to allow him to send mail to the Nevada Attorney General without a "cursory visual inspection" of the contents of the envelope in order to check for offensive or dangerous materials. The defendants are various prison officials who promulgated, administer, and enforce the regulation pursuant to which the inspections are made. The district court granted summary judgment in favor of defendants. Witherow appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

■ Appellant, as a prison inmate, enjoys a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S.Ct. 1874, 1878–79, 104 L.Ed.2d 459 (1989). However, a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Legitimate penological interests include "security, order, and rehabilitation." *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974). When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a "closer fit between the regulation and the purpose it serves." *Abbott*, 490 U.S. at 412, 109 S.Ct. at 1881. However, in neither case must the regulation satisfy a "least restrictive means" test. *Id.* at 411–13, 109 S.Ct. at 1880–81 (explaining *Procunier v. Martinez*).

We find that the regulation challenged in this case is closely related to a legitimate penological interest. That regulation requires that when an inmate seeks to mail a letter to certain public officials, including the state Attorney General, he must notify a prison unit officer. It provides:

The unit officer will perform a cursory visual inspection of the mail without reading any portion of the contents. The officer must be able to verify the inmate's name and back number. He will see that it matches the inmate's name and number shown on the return address portion and that the word "confidential" appears on the face of the envelope/packet. Once this is completed, the item is to be sealed in the presence of the officer.

State of Nevada Dept. of Prisons, Administrative Directive # 17–92 [hereinafter AD 17–92].

The state has articulated a legitimate penological interest for this regulation. It is undisputed that AD 17–92 was promulgated because prisoners had sent items such as feces, a urine soaked letter, and dirty underwear to various Nevada public offices through the mail. In addition, the regulation protects those offices from dangerous items. Preventing prisoners from disseminating offensive or harmful materials clearly advances the orderly administration of prisons, the rehabilitation of prisoners, and the security of those receiving the materials.

Furthermore, there is a close relationship between these goals and the method by which the regulation accomplishes them. The regulation provides that the "officer will perform a cursory visual inspection" to check for offensive items. It specifically requires that the officer not read "any portion of the contents," except the return address, which must be verified to insure proper identification of the sender. The regulation achieves its goals while avoiding unnecessary intrusion.

Appellant argues that because AD 17–92 relates to mail sent to public officials, some undefined, but higher level of scrutiny must apply in this case. To support his argument, appellant cites a line of cases from other circuits beginning with *Taylor v. Sterrett,* 532 F.2d 462 (5th Cir.1976). Those cases appear to require more exacting scrutiny of regulations affecting prisoner mail sent to public officials because such mail implicates the right to petition for grievances and the right of access to the courts guaranteed by the due process clause. *Id.* at 478–81; *Guajardo v. Estelle,* 580 F.2d 748, 757–59 (5th Cir.1978).

We first note that even if we apply a more exacting analysis to this regulation, we find it permissible because it so clearly advances valid governmental interests, while it fully allows prisoners to send confidential information to public officials.

Furthermore, the Fifth Circuit itself has expressly repudiated *Sterrett* and its progeny. *Brewer v. Wilkinson,* 3 F.3d. 816, 824–25 (5th Cir.1993). The *Brewer* court concluded that the more recent analysis by the Supreme Court in *Turner v. Safley* and *Thornburgh v. Abbott* applies to all prisoner mail cases, because that analysis adequately safeguards both the applicable due process rights and the First Amendment rights of prisoners. *Brewer,* 3 F.3d at 825.

■ Finally, the appellant claims that summary judgment was inappropriate in this case because there is a factual dispute concerning the application of this regulation by prison officials. However, the appellant's declaration does not allege that officials have actually read any of his mail in violation of AD–92. He merely alleges that officials "may" read his mail. Even assuming that such reading would violate his constitutional rights, appellant's speculation does not create a factual dispute. He has introduced no evidence to controvert the affidavit of Margaret Leavitt, an employee in the prison mail room. She specifically states that at most either the prisoner or the officer removes and shakes the contents of the envelope, and that at no time does the officer read the mail.

AFFIRMED.