Dissent by Judge BYBEE.
OPINION
SILVERMAN, Circuit Judge:
Plaintiff-Appellant Scott Nordstrom is on death row in the Arizona State Prison. He alleges that when he sought to send a confidential letter—“legal mail”—to his lawyer, a prison guard actually read the letter, instead of merely scanning and inspecting the letter for contraband. He claims that when he protested to the guard that the letter was a confidential attorney-client communication and should not be read, the guard told him to go pound sand. Nordstrom’s formal grievances were denied on the stated ground that Department of Corrections staff “is not prohibited from reading the [legal] mail to establish the absence of contraband and ensure the content of the mail is of legal subject matter.”
Nordstrom then brought a 42 U.S.C. § 1983 lawsuit against Department of Corrections officials, as well as the officer who allegedly read his legal mail, seeking to enjoin them from reading his letters to his lawyer. He alleges that the defendants’ conduct violates various constitutional rights, including his Sixth Amendment right to counsel. The district court dismissed the complaint at the pre-answer screening stage for failure to state a claim under any constitutional theory. See 28 U.S.C. § 1915A.
A prison is no ordinary gated community. It’s a tough place. Corrections officials obviously have good reason to be on the lookout for contraband, escape plans, and other mischief that could jeopardize institutional security. Officials likewise have every right to inspect an inmate’s outgoing legal mail for such suspicious features as maps of the prison yard, the times of guards’ shift changes, and the like. Prison officials know what to look for. But inspecting letters and reading them are two different things, as the Supreme Court recognized in Wolff v. McDonnell, 418 U.S. 539, 576-77, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). What prison officials don’t have the right to do is read a confidential letter from an inmate to his lawyer. This is because it is highly likely that a prisoner would not feel free to confide in his lawyer such things as incriminating or intimate personal information—as is his Sixth Amendment right to do—if he knows that the guards are reading his mail.
Reading legal mail—not merely inspecting or scanning it—is what Nordstrom alleges the Department of Corrections is doing, and it is what he seeks to enjoin. We hold today that his allegations, if true, state a Sixth Amendment violation. We reverse the dismissal of his complaint.
BACKGROUND
In reviewing an order dismissing a case for failure to state a claim, we “take as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiffs favor.” Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir.2011).
Nordstrom’s claims against Charles L. Ryan, the ADC Director, A. Ramos, the Deputy Warden of ADC-Eyman, and F. Hawthorne, a correctional officer, center *907 around the ADC’s policies and practices concerning outgoing legal mail. Nord-strom alleges that on May 2, 2011, he prepared a letter to send to Sharmila Roy, the court-appointed lawyer representing him in the appeal of his murder conviction and death sentence. The envelope was marked “legal mail” and was addressed to “Attorney at Law Sharmila Roy, Esq.” Nordstrom notified Officer Hawthorne, who was conducting a security walk, that he had legal mail ready to be processed. Nordstrom alleges that Hawthorne “took [the] clearly marked ‘legal mail’ envelope and removed the two page letter and proceeded to read the content of [the] correspondence.” Nordstrom asked Hawthorne to stop reading his “attorney-client privileged correspondence.” Hawthorne responded: “[D]on’t tell me how to do my job; I am authorized to search legal mail for contraband as well as scan the content of the material to ensure it is of legal subject matter.” Nordstrom then told Hawthorne he “was not authorized to read [the] legal letter, only inspect for contraband; seal, stamp, and log.” Hawthorne again told Nordstrom he “was not in a position to tell him how to do his job” and “shoved [the] letter” back to Nordstrom. Nordstrom sealed the letter and placed it in the door, and it was gone the next morning.
Nordstrom filed a series of grievances complaining that Hawthorne read his privileged letter. His final appeal was to ADC Director Ryan. Ryan’s response cited the ADC’s written legal mail policy, Order 902.11, which states in relevant part:
1.4.2.2 All outgoing letters to an inmate’s attorney or to a judge or court shall be brought to the mail room by the inmate, where the letter shall not he read or censored but shall be inspected for contraband and sealed in the presence of the inmate. All outgoing legal documents to an inmate’s attorney or to a judge or court (other than letters to an inmate’s attorney or to a judge or court, such as pleadings, briefs and motions) shall not be censored, but staff are not prohibited from reading such documents to the extent necessary to establish the absence of contraband.
(Emphasis added.) In denying Nord-strom’s grievance, Ryan reasoned that “[s]taff is authorized to scan and is not prohibited from reading the mail to establish the absence of contraband and ensure the content of the mail is of legal subject matter.” (Emphasis added.)
Nordstrom alleges that Officer Hawthorne’s conduct and Director Ryan’s approval of that conduct “forced him to cease conveying critically sensitive information concerning necessary aspects of his case for appellate adjudication to his attorney due to [ADCj’s continued threat to read any outgoing legal correspondence.”
Nordstrom filed this § 1988 action pro se alleging that the ADC’s policy and practice of reading his outgoing legal mail violates his First, Sixth, and Fourteenth Amendment rights. In addition to costs, he seeks a declaration that the defendants’ conduct was unconstitutional and an injunction preventing them from reading his legal mail in the future.
The district court dismissed the first amended complaint with prejudice at the pre-answer screening stage under the Prison Litigation Reform Act (“PLRA”), 28 U.S.C. § 1915A.[1] First, the court held *908 that Nordstrom could not state a claim for violation of his right of access to the courts because he failed to allege Hawthorne’s conduct caused him actual injury. Second, it held that Nordstrom failed to state a claim for violation of his right to counsel; the court stated that he did not demonstrate that the ADC had a policy of reading legal mail or show how the “one-time occurrence” of Hawthorne reading the confidential letter “impacted the attorney-client relationship.” The court also ruled that a policy permitting staff to scan legal mail is permissible. Third and finally, the district court held that Nordstrom had no cognizable free speech claim because “the reading of an inmate’s legal mail, in the inmate’s presence, to check for the presence of contraband or illegal activity is the type of regulation allowed for the purpose of maintaining institutional security.”
DISCUSSION
I. Legal Standards
We have jurisdiction pursuant to 28 U.S.C. § 1291, and we review de novo a district court’s dismissal of a complaint under 28 U.S.C. § 1915A for failure to state a claim. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.2000).
Dismissal for failure to state a claim under § 1915A “incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).” Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir.2012). To survive § 1915A review, a complaint must “contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.” Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted)). Pro se complaints are construed “liberally” and may only be dismissed “if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Id. (quoting Silva, 658 F.3d at 1101); see Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir.1988) (“Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.” (internal quotation marks omitted)).
II. Constitutional Framework
Federal courts have traditionally “adopted a broad hands-off attitude toward problems of prison administration” because “courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.” Procunier v. Martinez, 416 U.S. 396, 404-05, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled in part by Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Nonetheless, “[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution,” Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and a court will intervene “[w]hen a prison regulation or practice offends a fundamental constitutional guarantee,” Martinez, 416 U.S. at 405, 94 S.Ct. 1800.
The Supreme Court spoke on the issue of the inspection of prisoner legal mail in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In Wolff, the *909 Supreme Court upheld a Nebraska prison regulation that allowed prison officials to open and inspect—but not read—legal mail sent to an inmate:
As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate’s presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials’ opening the letters.... [W]e think that petitioners, by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps even more, than the Constitution requires.
Id. at 577, 94 S.Ct. 2963 (emphasis added).
Following Wolff, courts have analyzed claims regarding the confidentiality of attorney-inmate communications under various constitutional principles, including the First Amendment right to freedom of speech and the Fourteenth Amendment rights to due process and access to the courts, or some combination of these rights.[2] Courts also have recognized that “while most cases brought by prisoners are civil ... [a] practice of prison officials reading mail between a prisoner and his lawyer in a criminal case would raise serious issues under the Sixth Amendment ... which guarantees a right to counsel in criminal cases.” Guajardo-Palma v. Martinson, 622 F.3d 801, 803 (7th Cir.2010); see also Merriweather v. Zamora, 569 F.3d 307, 317 (6th Cir.2009) (“[O]pening properly marked legal mail alone ... implicates both the First and Sixth Amendments because of the potential for a ‘chilling effect.’ ”); Altizer v. Deeds, 191 F.3d 540, 549 n. 14 (4th Cir.1999) (“Inspecting an inmate’s legal mail may implicate the inmate’s Sixth Amendment right to communicate freely with his attorney in a criminal case-.”).
Nordstrom alleges that the defendants’ conduct interfered with attorney-client communications related to the appeal of his murder conviction and death sentence. His claims therefore fall squarely within the scope of the Sixth Amendment right to counsel, and we do not consider whether he also states claims for infringement of his rights to free speech and/or access to the courts.
III. Sixth Amendment Right to Counsel
The Sixth Amendment provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.” U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335, 342-43, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that Sixth Amendment right to counsel extends to state court proceedings through the Fourteenth Amendment). The right to counsel “is a fundamental component of our criminal justice system,” and “[l]awyers in criminal cases are necessities, not luxuries.” United States v. *910 Cronic, 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (internal quotation marks omitted). “When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant.” Williams v. Woodford, 384 F.3d 567, 584-85 (9th Cir.2004); see United States v. Irwin, 612 F.2d 1182, 1186-87 (9th Cir.1980).
A criminal defendant’s ability to communicate candidly and confidentially with his lawyer is essential to his defense. In American criminal law, the right to privately confer with counsel is nearly sacrosanct. See Adams v. Carlson, 488 F.2d 619, 631 (7th Cir.1973). It is obvious to us that a policy or practice permitting prison officials to not just inspect or scan, but to read an inmate’s letters to his counsel is highly likely to inhibit the sort of candid communications that the right to counsel and the attorney-client privilege are meant to protect. As one court put it, “[i]t is well established that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him.” Coplon v. United States, 191 F.2d 749, 757 (D.C.Cir.1951); see Mastrian v. McManus, 554 F.2d 813, 821 (8th Cir.1977). It takes no stretch of imagination to see how an inmate would be reluctant to confide in his lawyer about the facts of the crime, perhaps other crimes, possible plea bargains, and the intimate details of his own life and his family members’ lives, if he knows that a guard is going to be privy to them, too.
Other courts have come to similar conclusions. See, e.g., Lemon v. Dugger, 931 F.2d 1465, 1468 (11th Cir.1991) (recognizing inmate’s “constitutional right not to have his mail read” and holding that inmate stated a claim where a prison official read a letter from his death penalty appellate attorney in his presence); Al-Amin, 511 F.3d at 1323 n. 13 (“Nor do defendants deny that the law is well-established that Al-Amin has a constitutional right that precludes them from reading Al-Amin’s attorney mail.”); see also, e.g., Peterson v. Arpaio, No. CV04-2276-PHX-SMM-LOA, 2006 WL 3736060, at *4 (D.Ariz. Nov. 21, 2006) (“Prisoners have a constitutional right to have their legal mail delivered to them uncensored and unread.”).
The defendants contend that they are permitted to read Nordstrom’s legal mail as long as they do so in his presence. But they fail to explain how that practice ameliorates the chilling effect likely to result from an inmate’s knowledge that every word he writes to his lawyer may be intercepted by prison guards and possibly used against him. Rather, the practice of requiring an inmate to be present when his legal mail is opened is a measure designed to prevent officials from reading the mail in the first place. See Wolff, 418 U.S. at 577, 94 S.Ct. 2963 (opening attorney mail in the presence of the inmate could not “chill such communications, since the inmate’s presence insures that prison officials will not read the mail”); see also, e.g., Gardner v. Howard, 109 F.3d 427, 431 (8th Cir.1997) (“The policy that incoming confidential legal mail should be opened in inmates’ presence ... serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband.”).
We emphasize that nothing prevents the ADC from inspecting an inmate’s outgoing mail, in his presence, to make sure that it does not contain, for example, a map of the prison yard, the time of guards’ shift changes, escape plans, or contraband. What the Constitution does not permit, however, is reading outgoing attorney- *911 client correspondence. And by the way, neither does the ADC’s own regulation. Order 902.11.1.4.2.2 specifically states that “[a]ll outgoing letters to an inmate’s attorney ... shall not be read or censored but shall be inspected for contraband and sealed in the presence of the inmate.”[3] While a prison regulation does not equate to a constitutional right, it just goes to show that even the ADC understands that legal mail should not be messed with unnecessarily.
Were Nordstrom challenging a conviction following an improper intrusion into the attorney-client relationship, we would examine whether the violation caused prejudice requiring the reversal of the conviction. See Weatherford v. Bursey, 429 U.S. 545, 558, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); Irwin, 612 F.2d at 1185-89. Nord-strom’s case, however, is a civil rights lawsuit aimed at enjoining the continuation of an unconstitutional practice. The harm Nordstrom alleges is not that tainted evidence was used against him but that his right to privately confer with counsel has been chilled. This is a plausible consequence of the intentional reading of his confidential legal mail. Cf. Weatherford, 429 U.S. at 554 n. 4, 97 S.Ct. 837 (“One threat to the effective assistance of counsel posed by government interception of attorney-client communications lies in the inhibition of free exchanges between defendant and counsel because of the fear of being overheard.”).
In sum, Nordstrom’s allegations that prison officials read his legal mail, that they claim entitlement to do so, and that his right to private consultation with counsel has been chilled state a Sixth Amendment claim.
IV. Injunctive Relief
Nordstrom’s allegations also support a claim for injunctive relief. A plaintiff seeking prospective injunctive relief “must demonstrate ‘that he is realistically threatened by a repetition of [the violation].’ ” Armstrong v. Davis, 275 F.3d 849, 860-61 (9th Cir.2001) (alteration in original) (quoting City of L.A. v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504-05, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005). A threat of repetition can be shown “at least two ways.” Id. at 861. “First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury ‘stems from’ that policy.” Id. “Second, the plaintiff may demonstrate that the harm is part of a ‘pattern of officially sanctioned ... behavior, violative of the plaintiffs’ [federal] rights.’ ” Id. (alterations in original) (quoting LaDuke v. Nelson, 762 F.2d 1318, 1324 (9th Cir.1985)).
Nordstrom alleges that the ADC has a policy and practice of reading his outgoing legal mail. He supports this allegation with the grievance appeal response from Director Ryan that states that “[s]taff is ... not prohibited from reading the mail to establish the absence of contraband and ensure the content of the mail is of legal subject matter.” This statement, signed by Director Ryan himself, supports Nord-strom’s allegations that Hawthorne’s conduct was not simply a one-time mistake or confusion over the contours of the ADC policy. Inasmuch as Nordstrom remains incarcerated and alleges the ADC Director has personally informed him that prison *912 officials are permitted to read his legal mail, he has adequately alleged the threatened repetition of the alleged Sixth Amendment violation.
CONCLUSION
We REVERSE the district court’s dismissal for failure to state a claim and REMAND for further proceedings.

. The PLRA contains a provision requiring district courts to screen prisoner complaints before or soon after docketing if the case is "a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.” 28 U.S.C. § 1915A(a). A court must dismiss a complaint if it is "frivolous, malicious, or fails to *908 state a claim upon which relief may be granted,” or if it "seeks monetary relief from a defendant who is immune from such relief.” 28 U.S.C. § 1915A(b). The purpose of § 1915A is "to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.” Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 681 (7th Cir.2012).

. See, e.g., Guajardo-Palma v. Martinson, 622 F.3d 801, 802 (7th Cir.2010) (declining to analyze prisoner legal mail claim under the First Amendment and instead basing "the concern with destroying that [attorney-client] confidentiality on the, right of access to the courts” or "on the due process right to a fair hearing”); Al-Amin v. Smith, 511 F.3d 1317, 1334-35 (11th Cir.2008) (concluding that a prison policy of opening a prisoner's legal mail outside of his presence violated his "First Amendment free speech right to communicate with his attorneys by mail”); Jones v. Brown, 461 F.3d 353, 359 (3d Cir.2006) ("A state pattern and practice, or ... explicit policy, of opening legal mail outside the presence of the addressee inmate ... impinges upon the inmate’s right to freedom of speech.”).

. The regulation further states that, in contrast to letters, other "outgoing legal documents ... such as pleadings, briefs and motions,” may be read “to the extent necessary to establish the absence of contraband.” This portion of 902.11.1.4.2.2 is not implicated because Nordstrom specifically alleges that Hawthorne read his confidential legal letter.