## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CHAD WAYNE HURN, | No. 56043-7-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS; KERRI MCTARSNEY; MARGARET GILBERT; TAMMY NIKULA; DANIEL DAVIS; ISRAEL "ROY" GONZALES; all in their individual and official capacities | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. – Chad Hurn appeals the trial court's order dismissing his complaint for negligence, trespass to chattels, and violation of his civil rights under 42 U.S.C. § 1983 against the Department of Corrections (DOC) and five DOC employees. He argues that the court erred in dismissing his § 1983 claim because genuine issues of material fact exist regrading whether he was denied his federal constitutional rights to communication with his attorney, access to the courts, and due process.

We hold that Hurn fails to establish a violation of his federal constitutional rights. Accordingly, we affirm the trial court's order granting summary judgment dismissal of Hurn's § 1983 claim.

FACTS

I.    FACTUAL BACKGROUND

Hurn is an inmate in DOC custody after a jury found him guilty of 13 offenses, including assault in the second degree, unlawful possession of a firearm, possession of a stolen firearm, possession of a stolen vehicle, making or having vehicle theft tools, identity theft, tampering with a witness, communication with a minor for immoral purposes, and intimidating a witness. *State v. Hurn*, No. 71813-4-I, slip op. at 3-4 (Wash. Ct. App. Dec. 7, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/718134.pdf, *review denied*, 185 Wn.2d 1036 (2016). Division One of this court affirmed. *Id*. at 1.

Hurn is serving his sentence at Stafford Creek Corrections Center. During the events relevant to this appeal, the superintendent of the corrections center was Margaret Gilbert and the grievance coordinator was Kerri McTarsney.

II.   DOC MAIL POLICY

DOC Policy 450.100 sets forth DOC's policy regarding mail services for offenders and defines staff responsibility for maintaining safety and security. Mail between an inmate and counsel is considered legal mail. *See* Clerk's Papers (CP) at 48-49 (DOC Policy 450.100(VII)(A)(1)(a), (c), & (d)). Incoming legal mail is opened by a designated employee, who "inspect[s] the contents to ensure they meet the policy requirements for legal mail and do not contain contraband or any other material that would threaten facility order or security." CP at 49 (DOC Policy 450.100(VII)(D)(1)). One policy requirement is that incoming mail may not contain information about another inmate without specific approval from the facility superintendent. *See* CP at 59 (DOC Policy 450.100 26). This prohibition is to minimize the threat posed by an inmate

who uses printed documents about another inmate to "coerce, intimidate, manipulate, or retaliate against that offender, threatening the safety, security, and order of the facility. CP at 95.

## III. MAIL REJECTIONS

### A. First Rejection—No. 52954

On October 7, 2015, DOC legal mail officer Tammy Nikula opened legal mail in Hurn's presence. The mail was from the King County Department of Public Defense Defender's Association Division. After inspecting the documents, Nikula determined that the mail contained documents with unapproved information about another inmate in violation of DOC policy. Nikula confirmed that the listed individual was an inmate through the Offender Management Network Information (OMNI) database. Based on this, Nikula rejected the mail and issued rejection notice 52954. Hurn appealed. He also complained to Gilbert about the time his appeal was taking. The rejection was ultimately upheld on appeal by the superintendent's designee, Daniel Davis, and by DOC's correctional program manager, Israel "Roy" Gonzalez.

### B. Second Rejection—No. 52972

On October 8, 2015, Nikula again opened legal mail from the defender's association in Hurn's presence. She determined the mail contained documents with unapproved information about another inmate in violation of DOC policy. She confirmed that the listed individual was an inmate through OMNI. Nikula rejected the mail and issued rejection notice 52972. Davis and Gonzalez upheld the rejection.

### C. Third Rejection—No. 10217

On October 14, 2015, Nikula opened legal mail addressed to Hurn from attorney Peter Connick in Hurn's presence. After inspecting the documents, she determined that the mail contained documents with unapproved information about another inmate in violation of DOC

3

policy. She confirmed that the listed individual was an inmate through OMNI. Nikula rejected the mail and issued rejection notice 10217. Hurn appealed. He also filed a grievance with McTarsney. Davis and Gonzalez upheld the rejection.

### D. Fourth Rejection—No.13203

On July 1, 2016, Nikula opened legal mail addressed to Hurn from the defender's association in Hurn's presence. After inspecting the documents, she determined that the mail contained documents with unapproved information about another inmate in violation of DOC policy. She confirmed that the listed individual was an inmate through OMNI. Based on this, she issued mail rejection 13203. Hurn appealed the mail rejection, and both a superintendent's designee and Gonzalez upheld the rejection.

## III. DOC STAFF CHANGES

Since the mail incidents in 2015 and 2016, Nikula transferred out of DOC's legal mail department. And Gilbert, McTarsney, Davis, and Gonzalez are no longer DOC employees.

## IV. PROCEDURAL HISTORY

Hurn filed a complaint against DOC, Gilbert, McTarsney, Nikula, Davis, and Gonzalez. He alleged negligence, trespass to chattels, and civil rights violations under § 1983. The defendants filed a motion for summary judgment, which the trial court granted, dismissing all Hurn's claims. Hurn appeals the summary judgment order.[1]

---

[1] Hurn appeals solely the constitutional issues applicable to his § 1983 claim; he does seek review of the trial court's dismissal of his other claims.

4

ANALYSIS

Hurn contends the trial court erred in dismissing his § 1983 claim in summary judgment. He argues that DOC and the DOC employees violated several of his constitutional rights. We disagree.

I.      STANDARD OF REVIEW

We review a trial court's order on summary judgment de novo. *Weaver v. City of Everett*, 194 Wn.2d 464, 472, 450 P.3d 177 (2019). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Id*. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Weaver*, 194 Wn.2d at 472.

II.     42 U.S.C. § 1983

42 U.S.C. § 1983 seeks to protect citizens who have been deprived of their constitutional rights by someone acting under the color of state law. That statute states,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To prevail on a § 1983 claim, a party "'must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" *Freedom Found. v. Teamsters Local 117 Segregated Fund*, 197 Wn.2d 116, 145, 480 P.3d 1119 (2021) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)).

A plaintiff may not bring suit under § 1983 in state court against the State because a state is not a person subject to suit within the meaning of § 1983. *Wash. State Republican Party v. Pub.*

*Disclosure Comm'n*, 141 Wn.2d 245, 285-86, 4 P.3d 808 (2000). Similarly, state agencies are not subject to § 1983 actions. *ARUP Labs., Inc. v. State*, 12 Wn. App. 2d 269, 276, 457 P.3d 492, *review denied*, 196 Wn.2d 1006 (2020). But a plaintiff may assert § 1983 claims against government officials in their individual capacities for actions taken under color of state law. *Republican Party*, 141 Wn.2d at 286.

When a defendant moves for summary judgment on a § 1983 claim, the trial court has two questions before it. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). The first question is whether the facts asserted by the plaintiff make out a violation of a constitutional right. *Id.* The second question is whether the right was clearly established at the time of the violation. *Id*

If a government official has deprived a prisoner of his or her constitutional rights, the prisoner may seek damages from the individual government official and/or injunctive relief. *See* 42 USC § 1983; *Parmelee v. O'Neel*, 168 Wn.2d 515, 525, 229 P.3d 723 (2010)

> A. DOC not Subject to § 1983 Action and Injunctive Relief not Available Against Former DOC employees

As an initial matter, we hold that because DOC is a state agency, it is not subject to a § 1983 action. *ARUP Labs.*, 12 Wn. App. 2d at 276. The trial court properly granted summary judgment dismissal in DOC's favor. Additionally, because Nikula no longer works in DOC's legal mail department and Gilbert, McTarsney, Davis, and Gonzalez are no longer DOC employees, there is no on-going action by these individuals that needs to be enjoined. Thus, there is no injunctive relief available to Hurn and claims for injunctive relief against these individual defendants are moot. *See Client A v. Yoshinaka*, 128 Wn. App. 833, 841, 116 P.3d 1081 (2005) (matter is moot when count cannot provide effective injunctive relief).

6

While claims for injunctive relief against the individuals listed above are moot, we still address whether genuine issues of material fact exist regarding Hurn's § 1983 action against the DOC staff[2] based on constitutional violations and if so, whether Hurn is entitled to damages.

B.     Hurn Fails to Show State Officials Violated his Constitutional Rights.

1.     Private Communication with Counsel—Sixth Amendment

Hurn contends that the DOC staff violated his Sixth Amendment constitutional right to communicate with counsel privately. We disagree.

The Sixth Amendment right to counsel includes the right to communicate privately with that counsel. *State v. Peña Fuentes*, 179 Wn.2d 808, 811, 318 P.3d 257 (2014). In the criminal context, we look to whether (1) a state actor participated in the infringing conduct alleged by the defendant; (2) if so, did the state actor(s) infringe on a Sixth Amendment right of the defendant; (3) if so, was there prejudice to the defendant, that is did the State fail to overcome the presumption of prejudice arising from the infringement by not proving the absence of prejudice beyond a reasonable doubt; and (4) if so, what is the appropriate remedy to select and apply, considering the totality of the circumstances. *State v. Irby*, 3 Wn. App. 2d 247, 252-53, 415 P.3d 611 (2018).

Similarly, in the § 1983 claim context, a party must establish that he or she was deprived of the right to private communication with counsel and that the state official's actions "hindered

---

[2] The State argues that all claims against McTarsney and Gilbert must fail as a matter of law because Hurn does not show how these individuals personally participated in his claims. A plaintiff may assert a § 1983 claim against government officials in their individual capacities for actions taken under color of state law. *Republican Party*, 141 Wn.2d at 286. McTarsney was the corrections center's grievance coordinator and Gilbert was the correction center's superintendent. Both were government officials involved in Hurn's grievance and appeal process. Accordingly, we are unpersuaded by the State's argument.

[the defendant's] efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).[3]

While inmates have a Sixth Amendment right to confidential attorney client communication, that right is balanced with prison officials' need to maintain safety and security at the prison. *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017). For this reason, prison officials may not read legal mail, but they may inspect it to determine if it entails a threat to prison safety. *Id*.

Here, during the four incidents in question, prison officials inspected Hurn's mail and determined that its content violated DOC policy. While Hurn claims they did more than just inspect the mail, he fails to present a genuine issue of material fact regarding whether the mail was inspected or read.

Even assuming DOC staff's inspection and rejection of legal mail violated Hurn's Sixth Amendment right, Hurn must still show DOC staff's actions hindered his efforts to pursue a legal claim. *Lewis*, 518 U.S. at 351. He cannot make this showing. Hurn was able to appeal his convictions, raising numerous issues on review. *Hurn*, No. 71813-4-I, slip op. at 4-16. He also filed a personal restraint petition (PRP), where counsel successfully argued for Hurn's sentence to be reversed and remanded for resentencing. *In re Pers. Restraint of Hurn*, No. 78689-0-I, slip op. at *2 (Wash. Ct. App. July 20, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/786890.pdf. In this sense, Hurn's efforts to raise legal claims have not been hindered by the State officials' actions. Without this showing, Hurn's § 1983 claim fails. The trial court properly concluded likewise.

---

[3] Hurn asks this court to adopt the *Irby* test when reviewing a § 1983 claim. But because civil actions are separate and distinct from criminal matters, we decline to do so.

### 2. Access to Courts—First and Fourteenth Amendment

Hurn next contends that DOC staff interfered with his access to the courts, an action that violated his rights under the First and Fourteenth Amendments. We disagree.

Prisoners have a constitutional right of access to the courts. *Lewis*, 518 U.S. at 346. This includes an individual's right to litigate his claims in court without active interference from the prison. *Id.* An individual must establish that a prison's "active interference" caused them to suffer an "actual injury" in order for a claim to survive summary judgment. *Id.; Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011). "Actual injury . . . is 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Greene*, 648 F.3d at 1018 (*quoting Lewis*, 518 U.S. at 348). The right of access to courts derives in part from the First Amendment and the Fourteenth Amendment. *Boddie v. Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971); *Gonzales v. Inslee*, ___ Wn. App. 3d ___, 504 P.3d 890, 902 (2022).

Hurn contends that he was denied access to the courts because mail from defense counsel was rejected. He argues this caused actual injury because he was denied the opportunity to "litigate these claims and potentially other valid claims" including a claim that the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Br. of Appellant at 24. But while he generally addresses the withheld information and *Brady* claims, he fails to identify *how* that information impacted contemplated or existing litigation. Hurn has failed to show how the withheld information, caused him actual prejudice, and in so failing, does not show actual injury. Hurn's § 1983 claim based on violation of the First and Fourteenth Amendments fails. Again, the trial court properly concluded likewise.

3. Due Process—Fourteenth Amendment

Hurn next contends his due process rights were violated based on the manner his mail was inspected. We disagree.

An inmate has a Fourteenth Amendment due process liberty interest regarding the processing of his or her incoming mail. *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002). The minimum procedural safeguards afforded by the due process clause to inmate mail are notice that the mail was seized and a reasonable opportunity to protest the decision. *Id*. at 972.

Here, Hurn was notified of DOC's inspections and rejections, and given the opportunity to appeal each decision. Nevertheless, relying on former WAC 137-48-030(3) (2005)[4], Hurn argues his due process rights were still violated because DOC staff did not obtain a search warrant before inspecting his mail. But former WAC 137-48-030(3) did not require a search warrant to inspect mail, only to read the mail. And Hurn does not show a liberty interest in former WAC 137-48-030(3). Liberty interests are not created by negative implications from mandatory language in prison regulations. *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Rather, to create a liberty interest, the action taken must be an atypical and significant deprivation from the normal incidents of prison life. *Id*. Inspecting incoming legal mail based on safety and security concerns is not an atypical practice of prison life. Accordingly, Hurn shows no liberty interest in former WAC 137-48-030(3). Absent an established liberty interest, he cannot show deprivation in violation of due process protections.

Without a showing of a due process violation, Hurn's § 1983 claim based on violation of the Fourteenth Amendments fails. The trial court properly concluded likewise.

---

[4] Former WAC 137-48-030(3) stated, "Legal mail shall not be read without a search warrant but may be inspected in the presence of the inmate to verify legal mail status and that the mail is free of contraband."

C.      Damages

Because Hurn has failed to establish a violation of his federal constitutional rights, he is not entitled to damages under 42 U.S.C. § 1983. *City of Seattle v. McCready*, 124 Wn.2d 300, 312, 877 P.2d 686 (1994).

## CONCLUSION

We affirm the trial court's order granting summary judgment dismissal of Hurn's § 1983 claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Worswick, J.

Cruser, A.C.J.