NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

NAUM KOGAN, *Appellant.*

No. 1 CA-CR 19-0385

FILED 1-12-2021

Appeal from the Superior Court in Maricopa County
No. CR2017-155708-001
The Honorable Howard D. Sukenic, Judge
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

DM Cantor, Phoenix
By Christine Whalin
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

_____

**S W A N N**, Chief Judge:

¶1      Naum Kogan appeals from his convictions and sentences for sexual conduct with a minor, attempted sexual conduct with a minor, and sexual abuse.  Kogan contends that the superior court wrongly excluded evidence admissible under the Rape Shield Law, A.R.S. § 13-1421.  We detect no reversible error in the superior court's evidentiary rulings.  We therefore affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2      Kogan, 67 years old at the time, met the 14-year-old victim several days after she ran away from home.  The victim had run away several times before.

¶3      Kogan was living at an extended-stay hotel not far from the victim's house.  Kogan saw the victim as he was carrying groceries from his car into his room.  Kogan invited her into his room for something to eat and drink, and she accepted.

¶4      After Kogan and the victim talked and watched television for a short time, Kogan began kissing her.  He then escorted her to the bed and removed her shirt and bra.  According to the victim, Kogan undressed himself, kissed her breasts, and alternated between touching her vagina with his fingers and having penile-vaginal intercourse with her.  At a certain point, the victim realized she had an opportunity to leave and did so.  She walked directly to the hotel's front office and called her mother to come get her, without explaining why.

¶5      When the victim's mother arrived, the victim was crying quietly.  Her mother asked, "[w]ere you raped?" and the victim said, "[y]eah."  The mother called law enforcement, who came to the hotel.

¶6      Police officers found Kogan sitting in his car in the hotel parking lot.  When an officer asked him whether anyone had been in his

room that afternoon, Kogan said he and a female had sex in his room after eating and drinking. After being taken into custody and interrogated later that night, Kogan again admitted to having sex with the victim. He told the detective who questioned him that when he asked the victim how old she was, she said "eighteen," although Kogan believed she looked twenty-one or twenty-two. Kogan said they talked for a while and then mutually hugged, kissed, and had intercourse before the victim abruptly left. Kogan described taking the victim's shirt and bra off, touching and kissing her breasts, touching her vagina with his fingers, and having "normal sex" with her, i.e., penile-vaginal intercourse. After Kogan described the encounter, the detective told him he had spoken with the victim and while she confirmed the majority of Kogan's account, she also said she had told Kogan she was "fourteen." Kogan appeared surprised and insisted the victim told him she was eighteen but also remarked, "maybe I didn't hear well."

¶7 The state charged Kogan with three counts of sexual conduct with a minor under A.R.S. § 13-1405, alleging that he inserted his fingers in the victim's vagina two separate times (Counts One and Three) and had penile-vaginal intercourse with her (Count Two). The state also charged Kogan with one count of sexual abuse under A.R.S § 13-1404 (Count Four), alleging that he touched the victim's breasts.

¶8 At trial, Kogan testified that he and the victim reciprocally hugged and kissed, and she voluntarily accompanied him to the bed. He admitted helping her undress but said that he could not obtain an erection and the victim left his room without him touching her breasts or vagina. He said that he asked the victim to wait, hoping he would be able to obtain an erection with time, but she insisted on leaving. Kogan said that he lied to officers about having sex with the victim because he did not believe the victim was underage, he suspected he was being accused of nonconsensual sex, he was confused, and he was embarrassed to admit he could not perform.

¶9 The victim's shirt, shorts, and bra (she was not wearing underwear) were collected for evidentiary purposes a few hours after the incident, and swabs were taken from her clothing and various parts of her body. Of DNA profiles recovered from the evidence, Kogan matched swabs taken from the victim's left ear, bra clasp, and vagina.[1] The victim's

---

[1] The DNA analyst made a statistical association between Kogan's DNA and the sample taken from the victim's left ear of one in 8.9 octillion.

bra clasp also contained DNA from at least three males other than Kogan. The inner crotch area of her shorts contained DNA from at least four males, but the results were too limited to establish Kogan as a match. No semen or sperm was found in tests of the victim's shorts or vaginal aspirate. Kogan's genitals were swabbed as well and apparently did not show the presence of the victim's DNA. Kogan argued to the jury his DNA must have been inadvertently transferred to the victim's vagina, or her vaginal swab, by either the victim or the forensic nurse who conducted the victim's sexual assault examination.

**¶10** Jurors convicted Kogan of one count of sexual conduct with a minor using his fingers and the sexual abuse count. They acquitted Kogan of the second count of sexual conduct with a minor using his fingers. Unable to agree whether he had penile intercourse with the victim, jurors convicted him of the lesser offense of attempted sexual conduct with a minor on that count. The court sentenced Kogan to the minimum term of thirteen years' imprisonment for sexual conduct with a minor and placed him on lifetime probation for the other two convictions. Kogan appeals.

## DISCUSSION

**¶11** Before trial, Kogan filed motions *in limine* seeking to cross-examine the victim about issues relating to prior sexual conduct. Kogan contends that the superior court improperly restricted that examination under A.R.S. § 13-1421, commonly referred to as the Rape Shield Law. We review the superior court's exclusion of evidence under § 13-1421 for an abuse of discretion, but we consider the court's interpretation of the statute de novo. *See State v. Nordstrom*, 230 Ariz. 110, 114, ¶ 8 (2012); *State v. Herrera*, 232 Ariz. 536, 549, ¶ 38 (App. 2013).

**¶12** A.R.S. § 13-1421 states:

> A. Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for any offense in this chapter. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if a judge finds the evidence is

---

The analyst testified that the statistical association between Kogan's DNA and samples taken from the victim's bra and vaginal area was one in 1500. Swabs from the victim's vaginal area were processed using two different methods, resulting in two sets of results. Kogan's DNA was found in one set but not the other.

relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence, and if the evidence is one of the following:

1.  Evidence of the victim's past sexual conduct with the defendant.

2.  Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease or trauma.

3.  Evidence that supports a claim that the victim has a motive in accusing the defendant of the crime.

4.  Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.

5.  Evidence of false allegations of sexual misconduct made by the victim against others.

B.  Evidence described in subsection A shall not be referred to in any statements to a jury or introduced at trial without a court order after a hearing on written motions is held to determine the admissibility of the evidence.  If new information is discovered during the course of the trial that may make the evidence described in subsection A admissible, the court may hold a hearing to determine the admissibility of the evidence under subsection A.  The standard for admissibility of evidence under subsection A is by clear and convincing evidence.

I.      THE SUPERIOR COURT DID NOT ERR BY LIMITING KOGAN'S CROSS-EXAMINATION OF THE VICTIM ABOUT A PRIOR FALSE ALLEGATION.

¶13      Several months before the victim met Kogan, she ran away from home and took a bus to California.  After a few days, she called her mother and told her she had been kidnapped.  In speaking to police officers, the victim said that a man named "David" had kidnapped her in Arizona and taken to her to California against her will.  She said that "David" told her she would need to earn money by performing oral sex with his friend—which led her to flee and call her mother.  According to the victim's mother, the victim lied about being kidnapped to avoid getting into trouble for going to California.

¶14 Kogan filed a motion *in limine* to cross-examine the victim about her false account, arguing that the evidence was admissible under the Rape Shield Law because it showed the victim made "false allegations of sexual misconduct . . . against others" and had "a motive in accusing [the] defendant of a crime"—namely, to avoid being punished for running away again. *See* A.R.S. § 13-1421(A)(3), (5). The superior court denied the motion, reasoning that the evidence Kogan sought to present did not come within § 13-1421. The court ruled that under Arizona Rule of Evidence ("Rule") 608, however, Kogan could ask the victim's mother her general opinion on the victim's truthfulness and whether the victim was untruthful when she was afraid of getting in trouble.

¶15 Kogan then brought another motion *in limine* seeking to introduce evidence that "the victim . . . made the false allegation to her mother and to LAPD that she was kidnapped from Arizona and transported to Los Angeles" as showing that the victim's *modus operandi* was to lie after running away to avoid punishment. *See* Ariz. R. Evid. 404(b). After hearing argument, the superior court ruled that Kogan could "ask whether or not the victim got to California on her own and whether or not she lied about the kidnapping to avoid being in trouble." At trial, the victim admitted that she lied about being kidnapped so her mother would not be angry and that she sometimes lied when she believed she would otherwise get in trouble.

¶16 Kogan contends that the superior court abused its discretion by not allowing him to cross-examine the victim about the oral sex component of her story under A.R.S. § 13-1421. Kogan's argument is unconvincing. The superior court reasonably concluded that evidence the victim was told she would have to perform oral sex for money—which never actually occurred—was not a specific instance of the victim's prior sexual conduct subject to admission under § 13-1421. *Cf. State v. Duncan*, 228 Ariz. 514, 516, ¶ 4 (App. 2011) (holding that evidence not falling within the plain language of the Rape Shield Law exceptions is inadmissible under that statute). What Kogan sought to admit, in substance, was not evidence of the victim engaging in prior sexual conduct but rather evidence that the scope of her previous lie included an allegation relating to sexual conduct.[2] We therefore detect no error in the superior court's evidentiary ruling.

---

[2]   As we previously noted, the court allowed Kogan to cross-examine the victim about the alleged kidnapping as other-act evidence showing a *modus operandi* to lie in order to avoid being punished after running away.

¶17　　　　Further, even if the evidence could be deemed to show the victim's prior sexual conduct, we would find no error in the court's ruling because the evidence's relevance depended upon the allegation being false and Kogan failed to show, by "clear and convincing evidence" as A.R.S. § 13-1421(B) requires, that the oral sex allegation in the victim's account was a lie. *See State v. Perez*, 141 Ariz. 459, 464 (1984) (holding that an appellate court is "obliged to affirm the trial court's ruling if the result was legally correct for any reason"). While the victim may have lied about being kidnapped, her allegation of being asked to provide oral sex may or may not have been truthful. To prove the falsity of the victim's kidnapping story, Kogan relied on an interview with the victim's mother by law enforcement. In the interview, the mother made clear that the victim lied about being kidnapped from Arizona and taken to California. But the mother did not discount that the victim might have been told she would have to perform oral sex for money after she arrived in California and met "David" on a local bus. Given the mother's uncertainty, Kogan failed to demonstrate that it was "highly probable or reasonably certain" the victim was lying about the oral sex portion of her account. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005) (citation omitted).

II.　　THE SUPERIOR COURT'S ERROR IN LIMITING KOGAN'S CROSS-EXAMINATION OF THE VICTIM ABOUT RECENT SEXUAL PARTNERS WAS HARMLESS.

¶18　　　　The nurse who conducted the victim's sexual assault examination reported some bruising on the victim's breasts and minor injuries to her genitals. When the nurse asked the victim whether she had had sex with anyone other than Kogan in the five preceding days, the victim said no.

¶19　　　　Kogan filed a motion *in limine* seeking permission to cross-examine the victim about sexual activity with other partners in the days leading up to her encounter with Kogan, arguing that her testimony was admissible under the Rape Shield Law because it might show that someone other than Kogan caused the reported injuries. *See* A.R.S. § 13-1421(A)(2). In support of the motion, Kogan pointed to the following: forensic evidence

---

Kogan's Rule 404(b) motion referred only to the kidnapping aspect of the victim's account, without specifically asking the court to admit the oral sex component of her story. The absence of a transcript of the hearing on the motion leaves us unable to determine whether, and to what extent, the court addressed the oral sex allegation under Rule 404(b). Kogan's argument on appeal is limited to exclusion of the evidence under the Rape Shield Law.

showing DNA from multiple males other than Kogan on the victim's bra clasp and inner crotch area of her shorts, evidence that the victim had been a runaway for several days when she met Kogan, and evidence that the victim had been kicked out of another room at Kogan's hotel, which had been rented by a man, not long before she met Kogan.

¶20　　　　The superior court denied Kogan's motion after an evidentiary hearing. The court reasoned that Kogan's theory the victim might have had sex with someone before Kogan was "very speculative," and he failed to show "specific instances" of sexual conduct as contemplated by A.R.S. § 13-1421.

¶21　　　　During direct examination of the victim at trial, while discussing the victim's sexual assault examination, the prosecutor asked her: "And one of the questions that [the nurse] asked you, was it—let me rephrase. So, this happened on December 3rd, 2017. Prior to that, had you had any sexual intercourse with anyone other than the defendant the five days prior?" The victim answered, "No."

¶22　　　　The state's question about the victim's sexual activity prompted Kogan to ask the superior court to revisit its earlier ruling. Kogan argued that the state's question opened the door to him examining her about prior sex partners. The court concluded that the Rape Shield Law was "still . . . intact" because the prosecutor's question did not imply that the victim had no sexual history. The court ruled that Kogan could ask the victim the very same question asked by the state—namely, did she have sex with anyone else in the five-day period before she met Kogan—but he could go no further without court approval.

¶23　　　　The court's initial, pretrial ruling on Kogan's motion *in limine* was not an abuse of discretion because the court reasonably concluded that evidence of unknown male DNA on the victim's clothes, the victim's runaway status, and the victim's presence in another hotel room was not "clear and convincing evidence" that a prior sex partner caused the victim's injuries. But once the state asked the victim whether she had sex with anyone in the days before Kogan—which was the very question Kogan sought to ask the victim in his pretrial motion—the state opened the door to cross-examination on that issue. Evidence of a victim's prior sexual conduct is subject to admission under A.R.S. § 13-1421(A)(4) where "offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue." Here, the prosecutor put at issue the victim's sexual activity during the five-day period before she met Kogan. The

superior court unreasonably limited Kogan's efforts to ask follow-up questions about that issue.

¶24 The court's error was harmless, however, because the state has shown "beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). The record contains no indication that Kogan's cross-examination would have revealed any evidence not otherwise presented at trial. Even though an offer-of-proof requirement may be "relaxed" when the proof consists of an answer on cross-examination that counsel will not normally know in advance, "something more than speculation about possible answers is required to show prejudice." *State v. Towery*, 186 Ariz. 168, 179 (1996). Kogan's argument for cross-examining the victim about recent sexual partners was based on the DNA evidence, her runaway status, and her presence in another hotel room—all issues presented at trial and capitalized on by Kogan. Apart from pure speculation that the victim would admit on cross-examination that her previous testimony about sexual activity was a lie, Kogan had no information suggesting that he could elicit additional testimony from the victim helpful to his case. *See State v. Gallegos*, 178 Ariz. 1, 13 (1994) (holding erroneous exclusion of evidence harmless because it was "merely cumulative" to other evidence presented). We note also that even if Kogan did present evidence that the victim engaged in sexual activity with other partners, that evidence would not necessarily exculpate him.

¶25 In addition, we cannot ignore the overwhelming evidence supporting Kogan's convictions. "We can find error harmless when the evidence against a defendant is so overwhelming that any reasonable jury could only have reached one conclusion." *State v. Anthony*, 218 Ariz. 439, 446, ¶ 41 (2008). Kogan's DNA was found in the underage victim's vagina, and he himself testified that he kissed the victim, removed her bra, and intended to have intercourse with her. In order for jurors to have reached a different decision, they would have had to believe (1) Kogan's confession to specific details of where and how he kissed, touched, and had intercourse with the victim were all false, (2) the numerous consistencies between the victim's account and Kogan's confession were merely coincidental, and (3) either the victim herself transferred Kogan's DNA to her vagina or the forensic nurse contaminated the victim's vaginal swab with Kogan's DNA. To state the proposition is to show how untenable it is.

## CONCLUSION

¶26     We affirm for the reasons set forth above.



AMY M. WOOD • Clerk of the Court
FILED:     AA